MICHAEL F. CUSSACK, Appellant, *v.* OLIVER B. TWEEDY,
Individually and as Executor, etc., Respondent.

No presumption of the delivery of a deed can arise from an unauthorized
record thereof, made half a century after it was executed, shown to have
originated in a mistake.

Prior to September 20, 1815, one T. died intestate, seized of certain real
estate, and leaving six heirs at law, four of whom on that date executed
a deed of said real estate, in which their respective husbands and wives
joined, to C., another of said heirs, which was recorded in October fol-
lowing. In May, 1817, C. conveyed by deed an undivided half of said
premises to L., in trust for B., another of said heirs, who then owned
the remaining one-sixth. In January, 1825, B. conveyed to C. the out-
standing sixth owned by her, and on February 5, 1825, L. and B. con-
veyed their interest under said trust deed to C., who in her will recited
her entire ownership of all the shares and devised the premises in trust
to L., for the benefit of B. and a son of the testatrix during their lives,
with remainder in fee to L. The latter died in 1857. The two life-
tenants died before him. In 1865 L.'s executor placed on record the
three deeds last above mentioned and another dated September 9, 1815,
to C. and B. from the four other heirs, in which the wives of two of
them were named as grantors and places left in the deeds for their signa-
tures, but which were not signed by them, and a witness clause for their
signatures also remained unsigned, which deed, with the others, the
executors found in the testator's safe. In an action to recover back a

payment of purchase-money under a contract of sale of the premises by the executor of L. it appeared that the deed last mentioned was never passed to the hands of B., who knew only of the conveyance to C. Plaintiff refused to perform on the ground that a complete title never vested in L. *Held*, untenable; that the earlier deed was properly determined to have been undelivered and inoperative.

L., by his will, gave his residuary estate, including the premises in question, to his executors in trust, creating four separate trusts for the benefit of his children, each covering an undivided one-fourth of said residue, the income of the fourth set apart for each child to be paid to him or her during life, and upon his or her death the executors to convey such share with any unapplied income to such child's issue. By a subsequent clause of the will the executors and the survivors and survivor of them were authorized at any time or times to sell and dispose of the whole or any part of the estate, and in the meantime to collect and receive the rents. The contract in question was made after the death of one of the testator's children. A deed of the sole surviving executor was tendered to the purchaser and rejected. *Held*, that such deed was effectual to convey a good title; that the power of sale conferred upon the executors did not terminate on the death of one of the *cestui que trustent*, but survived; that the will authorized the trustee, holding as to an ended trust in the character of a tenant in common, to retain and exercise the power of sale and receive rents until final severance and distribution.

Reported below, 56 Hun, 617.

(Submitted March 5, 1891; decided March 17, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 11, 1889, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

This action was brought to recover back the amount paid by plaintiff on a contract for the purchase of certain premises.

The facts, so far as material, are stated in the opinion.

*Russell Benedict* and *Frederic de P. Foster* for appellant. A vendor, in fulfillment of an executorial contract for the sale of land, is bound to convey a good title to the purchaser unless the purchaser has relieved him from this obligation by express stipulation. A good title is a marketable title; that is, one

which has a clean record and is not dependent for its support upon proof of facts extrinsic to the record. A doubtful title is not a marketable title. (Williams' Eq. Juris. 266, 279, 289, 295; Fry on Cont. § 973; Waterman on Spec. Perf. § 411; *Schultz* v. *Rose*, 65 How. Pr. 75; *Burwell* v. *Jackson*, 9 N. Y. 535; *Delevan* v. *Duncan*, 49 id. 485; *Jordan* v. *Poillon*, 77 id. 518; *Shriver* v. *Shriver*, 86 id. 575; *Hellriegel* v. *Manning*, 97 id. 56; *Fleming* v. *Burnham*, 100 id. 1; *Abbott* v. *James*, 111 id. 673; *Moore* v. *Williams*, 115 id. 586; *Vought* v. *Williams*, 120 id. 253; *Irving* v. *Campbell*, 121 id. 353; *Swayne* v. *Lyon*, 67 Penn. St. 436; *Brunnell* v. *Jackson*, 9 N. Y. 535.) A title in respect of which strangers to the contract appear to have some claim of interest is not a marketable title. (*Moore* v. *Appleby*, 108 N. Y. 237; *Lockman* v. *Riley*, 95 id. 70; *Nodine* v. *Greenfield*, 7 Paige, 544; *Williamson* v. *Field*, 2 Sandf. Ch. 563; *Brennan* v. *Wilson*, 71 N. Y. 502; *Abbott* v. *James*, 111 id. 683; *Argall* v. *Raynor*, 20 Hun, 267.) The principles by which the court in equity is guided in deciding a suit brought by a vendor to compel performance of the contract, likewise govern an action brought by a vendee to recover the deposit made upon the contract. (*M. E. C. Home* v. *Thompson*, 108 N. Y. 618; *Moore* v. *Williams*, 115 id. 586.) The plaintiff is entitled to recover the amount of his deposit on the contract with interest, and his expenses in examining the title, if it appear that the title is unmarketable. (*Moore* v. *Appleby*, 108 N. Y. 237.) There is a reasonable doubt appearing upon the record whether there is not an outstanding interest in one-third of the premises in question in the heirs at law of Maria Burnham. (*Brackett* v. *Barney*, 28 N. Y. 333–340; *Chonteau* v. *Suydam*, 21 id. 170; *Fisher* v. *Hall*, 41 N. Y. 416; *Sparrow* v. *Kingman*, 1 id. 242; *Hinkley* v. *Smith*, 51 id. 21; *Wilson* v. *Holden*, 16 Abb. Pr. 133; *Shriver* v. *Shriver*, 86 N. Y. 575; *Emery* v. *Grocock*, 6 Madd. 54; *Lowes* v. *Lush*, 14 Ves. 548; *Smith* v. *Death*, 5 Madd. 371; Waterman on Spec. Perf. § 418.) The defendant, as surviving executor of the last will of Joseph N. Lord, had no power of sale as to one-fourth of

the premises in question. (*Bruner* v. *Meigs*, 64 N. Y. 506; *Manice* v. *Manice*, 43 id. 303; *Sage* v. *Lockman*, 53 How. Pr. 276; *Abbott* v. *James*, 111 N. Y. 673.)

*De Witt, Lockman & De Witt* for respondents. The alleged deed of September 9, 1815, is wholly void and inoperative for want of delivery. (3 Washb. on Real Prop. [5th ed.] 304, 312, 578; *Fisher* v. *Hall*, 41 N. Y. 416; *Knolls* v. *Barnhart*, 71 id. 474; *Roosevelt* v. *Carow*, 6 Barb. 190; *Jackson* v. *Phipps*, 12 Johns. 418; *Walsh* v. *V. M. Ins. Co.*, 54 Vt. 351; *Alexander* v. *De Kermel*, 81 Ky. 345; *Boyd* v. *Slayback*, 62 Cal. 493; *Wilsey* v. *Dennis*, 44 Barb. 354.) The law will not presume fraud, and so, where there are two deeds by the same person conveying the same premises, and the second deed is shown to be authentic, all presumption in favor of the first deed arising from its antiquity is completely overthrown. (*Wilson* v. *Betts*, 4 Den. 200, 216.) The consent of the grantee is essential to complete a delivery. (*Brackett* v. *Barney*, 28 N. Y. 333, 340.) Maria Burnham and her son John F. having accepted and received the full benefit of the provisions of the will of Magdalene Crook in their favor, and having failed for more than sixty years to make any claim to the fee of the premises in question, their heirs at law are estopped from asserting or claiming any title to the fee adverse to the title of Joseph N. Lord. (*Haven* v. *Sackett*, 15 N. Y. 365.) The question as to whether the alleged deed of September 9, 1815, creates any defect in the title of defendant is free from reasonable doubt. (*Mosher* v. *Cockrane*, 107 N. Y. 35; Pom. on Spec. Perf. § 204; *Ferry* v. *Sampson*, 112 N. Y. 415; *Fleming* v. *Burnham*, 100 id. 1.) The defendant has power under the will of Joseph N. Lord, deceased, to sell the whole premises, including the undivided fourth part vested in the children of Maria Tweedy, deceased. (*Huchins* v. *Baldwin*, 7 Bosw. 241; *Henderson* v. *Henderson*, 113 N. Y. 1; *Chittenden* v. *Fairchild*, 41 id. 289; *Kinnier* v. *Rogers*, 42 id. 531.)

FINCH, J.   The vendee objected to the title tendered by the vendor upon two grounds; one, that the complete title never vested in the latter's testator; and the other that, if it did, the executor's power of sale did not cover and cut off a vested interest as to which the trust had terminated.

All the difficulty underlying the first objection rests upon an imperfect and incomplete deed which the executor caused to be recorded after a lapse of fifty years.   Disregarding that, the title of the testator is complete and perfect.   It is conceded that prior to April 15, 1813, the premises were owned by George Thompson, who died seized and intestate, leaving six heirs at law, viz: George Thompson, John G. Thompson, Elizabeth Pinkney, Dolly Lord, Magdalene Crook and Maria Burnham, each entitled to an undivided one-sixth of the property.   On the 20th of September, 1815, the first four conveyed their interests to Mrs. Crook, the husbands and wives joining, and that deed was recorded early in the following October, and vested, with her own share, five-sixths of the estate in Mrs. Crook.   Objection was made to this deed on the ground of an alleged prior conveyance, but the objection was overruled and the deed admitted in evidence.   Mrs. Crook thus owning five-sixths of the estate, conveyed an undivided half to Joseph N. Lord in trust for Maria Burnham who owned the remaining one-sixth.   The deed was dated May 31, 1817, and recorded in 1865 or after an interval of almost fifty years. On February 5, 1825, Lord, the trustee, and Mrs. Burnham, the beneficiary, conveyed back their interest under the trust deed to Mrs. Crook, and that deed like its predecessor was recorded in 1865.   In January, 1825, Mrs. Crook acquired the outstanding one-sixth owned by Maria Burnham, and that deed was also recorded in 1865.   On the same day of the acknowledgement of that deed by Mrs. Burnham, Mrs. Crook made her last will in which she recites her entire ownership of all the shares and of the whole property and devises it to Joseph N. Lord in trust to pay the rents and profits to Mrs. Burnham for her life and then to her son John Francis Burnham for his life with remainder in fee to Joseph N. Lord.   By the death

of the two life tenants the unincumbered fee passed by his will. Lord died in 1857, and his executor, the defendant Tweedy, finding in Lord's safe four unrecorded deeds caused them to be recorded in 1865. Two of them were the deed of trust and conveyance back, any record of which was needless ; one was the deed of Mrs. Burnham which we know was delivered and became effectual because it is recited in Mrs. Crook's will under which the Burnhams took and accepted their life estates ; and one was the incomplete deed which the ·courts below have held was never delivered and never became operative. That deed is dated September 9, 1815, or just eleven days before the conveyance of the same grantors to Mrs. Cook, and was to her and Maria Burnham. The wives of the two Thompsons were named as grantors and seals were left for their signatures, but they had not signed. There was a witness clause for their signatures, and that remained unsigned. That deed never passed into the hands of the Burnhams. Maria knew of the actual conveyance made to Mrs. Crook alone, for she appears to have identified one of the grantors. It is quite evident from what followed that the original purpose of conveying to Mrs. Crook and Mrs. Burnham was abandoned through distrust of the latter's husband, and, instead, the conveyance was made to Mrs. Crook alone and she conveyed to Lord in trust for Mrs. Burnham. The imperfect and partly executed deed was found in the possession of Lord, and any possibility of its delivery is excluded by the after action and conduct of the parties. No presumption of a delivery can arise from an utterly unauthorized record shown to have originated in a mistake and made half a century after its original was drawn. The deed made eleven days later, completely and perfectly executed by all parties, and that to the knowledge of Mrs. Burnham herself, and the subsequent action of all such parties removes every reasonable doubt. On the face of the papers themselves the earlier deed must be held, as the courts below have agreed, to have been undelivered and entirely inoperative. Its invalidity sufficiently appears on the face of the records themselves.

But, assuming that a perfect title was established in Joseph N. Lord, a further question arises over the construction of his will.  He gave the residue of his property to his executors in trust for the benefit of his four children, creating four separate and several trusts, each covering an undivided one-fourth of the residue.  The trusts were to pay the income to each child for his or her life, and at his or her death to convey such share with any unapplied rents to such child's issue.  Each one of the separate trusts was for a single life, the termination of which by death ended the trust and vested a fee in possession in the remaindermen.  After the creation of these trusts the ninth clause of the will provided as follows: " I hereby authorize and empower my said executors and the survivors and survivor of them, and such and whichever of them as shall act, at their or his discretion, from time to time and at any time or times to sell and dispose of the whole or any part or parts of my estate, both real and personal, at public auction or private sale, in such manner, for such prices and upon such terms, and either for cash or on credit, or partly for cash and partly on credit, as they or he may approve, and upon any such sale or sales the same or any part thereof to convey and assure to the purchaser or purchasers, and in the meantime my said executors and the survivors and survivor, and such and whichever as shall act, are and is hereby authorized to collect and receive the rents of the whole and every part of my real estate."  The sole surviving executor is the present defendant, who as such tendered a deed duly executed under and in pursuance of the authority of the will.  By the death of one of the daughters an undivided fourth of the estate had vested in her issue, and the purchaser claims that the power of sale as to such one-fourth, ended with the determination of the trust, while the executor claims that the power survived and would continue until all the trusts were ended.  We have held on the one hand that such a power of sale, when general and unlimited and unrestricted, does not become inconsistent with the devise of a vested estate in the same property (*Crittenden* v. *Fairchild*, 41 N. Y. 289; *Kinnier* v. *Rogers*, 42 id. 531;

*Skinner* v. *Quin,* 43 id. 99), and on the other hand that where the power is in terms restricted and limited in point of time to the continuance of the respective trusts, the ending of the trust ends also the power. (*Bruner* v. *Meigs,* 64 N. Y. 506.) It would be difficult to frame a power of sale more broad and unrestricted than the one before us. It covers not merely the residue embraced in the trust, but the whole estate, and is unlimited as to time. It necessarily falls under the authorities first cited, unless we can find in its terms some definite indi-- cation that all the purposes for which the power was given, necessarily ended when any one of the four trusts terminated, and that the remainders were given, not subject to the power, but entirely freed from it. There seem to have been two purposes which the power was intended to accomplish : one to enable changes to be made in the capital of the estate with a view to the safety of investments and an increase of the earning power ; and the other to facilitate an ultimate division without the expense and delay of a partition. Neither purpose was bounded by the limits of a single one of the trusts ; each might remain unaccomplished, though a single one of the trusts had fallen in.

Some intended limitation of the power, notwithstanding the broad terms in which it is expressed, is sought to be argued out of the words " and in the meantime my said executors * * * are authorized to collect and receive the rents of the whole and every part of my estate," and the argument is that the power was to exist only while the right to receive rents remained. This authority was either a repetition of the one already given, or was a new one and deemed necessary. In either view, I think it points to a situation after one or more trusts have ended, and was meant to justify the trustee, holding as to an ended trust in the character of a tenant in common, to retain the power of sale and receive rents until final severance and distribution.

Two cases in the English courts have rewarded the industry of the respondent's counsel. (*Trower* v. *Knightley,* Madd. & Geld. 134; *Taite* v. *Swinstead,* 26 Beav. 525.) The last is

especially satisfactory. Its fundamental idea is expressed in the phrase "the power is unlimited and overrides the whole estate." We are thus of opinion that the power subsisted beyond the death of Mrs. Tweedy, and that the executor's deed was good. Having no doubt of the unsoundness of the objections to the title, we are prepared to concur with the majority of the General Term.

Its judgment should be affirmed with costs.

All concur.

Judgment affirmed.