Where a general power of sale given to the executrix in a will applies to the entire estate, and is designed to facilitate its distribution, it may coexist with an estate devised in fee.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1340–1350, 1608; Dec. Dig. ☞601.]

2. CONVERSION ☞15—EXECUTORS AND ADMINISTRATORS ☞138—CONSTRUCTION—POWER OF SALE—EFFECT OF EXERCISE.

   Testator, who was a lawyer, after directing an equal division of his property among his brother's children, one of whom was a minor, provided in his will: "I authorize and empower my executrix hereinafter named to execute any mortgage, deed or conveyance, to give good title to such property and carry into effect the provisions of this * * * will." On advice of counsel and without objections, the executrix sold certain of decedent's realty through an agent in good faith and for full value. Held, that the executrix was vested with a discretionary power of sale, valid as a power in trust, to convert the land into personalty, that she could convey good title, and that the title of the devisees in the realty was divested by the sale and an interest in the proceeds substituted therefor.

   [Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 28–37, 52; Dec. Dig. ☞15; Executors and Administrators, Cent. Dig. §§ 560–566, 568–575; Dec. Dig. ☞138.]

3. EXECUTORS AND ADMINISTRATORS ☞110—ACCOUNTING—EXERCISE OF POWER OF SALE—COMMISSION PAID TO AGENT.

   Where an executrix was of limited business experience, as testator knew, and the proper exercise of a power of sale given by the will required greater business experience than she possessed, she was entitled to an allowance for a reasonable fee paid to an agent to assist her in the matter.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 439; Dec. Dig. ☞110.]

4. EXECUTORS AND ADMINISTRATORS ☞504—ACCOUNTING—PLEADINGS—ISSUES.

   On the settlement of the accounts of an administratrix, the account and objections filed thereto constitute the pleadings, determine the issues to be tried, and limit the examination to such issues.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2157–2167; Dec. Dig. ☞504.]

5. EXECUTORS AND ADMINISTRATORS ☞504—ACCOUNTING—OBJECTION—ISSUES.

   An objection made to an executrix's account, on information and be-

lief, that the contestant's indebtedness to the estate is not correctly stated, in the absence of a denial of that part of the account involving contestant's interest, presents no issue, and does not require that the executrix prove her account as against the contestant.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2157–2167; Dec. Dig. ☞504.]

6. EXECUTORS AND ADMINISTRATORS ☞504—ACCOUNTING—OBJECTIONS.
Objections to an executrix's account, to be available, must plainly indicate the defects alleged.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2157–2167; Dec. Dig. ☞504.]

7. EXECUTORS AND ADMINISTRATORS ☞504—OBJECTION TO MODIFIED ACCOUNT.
Where the contested account of an executrix is modified, though not sufficiently to eliminate a balance in her favor, an objection that it appears from the account that testatrix has paid herself more than she was entitled to will be overruled.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2157–2167; Dec. Dig. ☞504.]

8. EXECUTORS AND ADMINISTRATORS ☞109—ACCOUNTING—OBJECTION—SURCHARGE.
On an account by an executrix, an objection to a sum paid by her for coal purchased after decedent's death to heat a house belonging to the estate, but occupied by her and her family, should be sustained.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 435–438, 440–447, 763; Dec. Dig. ☞109.]

9. EXECUTORS AND ADMINISTRATORS ☞506—ACCOUNTING—PAYMENT BY EXECUTRIX—SUFFICIENCY OF EVIDENCE.
Evidence in proceedings on the judicial settlement of an account of an executrix *held* to sustain a finding that the executrix was justified in paying the balance due on a land contract which had been assigned to testator.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2169–2177; Dec. Dig. ☞506.]

10. EXECUTORS AND ADMINISTRATORS ☞104—ACCOUNTING—SURCHARGE—INTEREST ON CHECKING ACCOUNT.
Where an executrix deposits in a checking account the money necessary to meet current expenses of the administration, she is not chargeable with interest thereon.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 423–432; Dec. Dig. ☞104.]

11. EXECUTORS AND ADMINISTRATORS ☞109—ACCOUNTING—FEE PAID TO APPRAISER—REASONABLENESS.
A payment by an executrix of $20 to an appraiser was not excessive, so as to require that it be disallowed on the accounting, where there were 232 items in 11 rooms, each room being separately inventoried, and also securities at testator's office, and the total personalty, as shown by the inventory, amounted to nearly $9,000.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 435–438, 440–447, 763; Dec. Dig. ☞109.]

12. GUARDIAN AND WARD ☞37—DUTY OF GUARDIAN.
A special guardian for an infant on accounting by an executrix should on his appointment so inform himself as to the condition of the affairs of the estate as to be able to act intelligently and legally at all times in court in the minor's behalf.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 168; Dec. Dig. ☞37.]

13. EXECUTORS AND ADMINISTRATORS ⬅313—ACCOUNTING—INTEREST ON
LEGACY.

Where the share of a legatee was not paid over to him at the expiration
of one year, when it became payable under Code Civ. Proc. § 2721, he
was entitled to interest thereon at the legal rate for such time as he was
kept out of his demand, regardless of whether the assets of the estate
had been productive.

[Ed. Note.—For other cases, see Executors and Administrators, Cent.
Dig. §§ 1271–1273½; Dec. Dig. ⬅313.]

14. EXECUTORS AND ADMINISTRATORS ⬅313—PREMATURE PAYMENT TO LEGA-
TEE—INTEREST.

Where a legatee receives a portion of the estate before being entitled
thereto, he is liable to the estate for interest lost thereon through the
premature payment.

[Ed. Note.—For other cases, see Executors and Administrators, Cent.
Dig. §§ 1271–1273½; Dec. Dig. ⬅313.]

15. EXECUTORS AND ADMINISTRATORS ⬅111—ACCOUNTING—FEE OF ATTORNEY
—REASONABLENESS.

An attorney's fee of $520, paid by an executrix for legal services, was
not unreasonable, so as to require that a charge therefor be disallowed on
an accounting, where the executrix was inexperienced in business af-
fairs, as testator knew, and there was considerable friction between
her and the legatees as to the construction of the will, an attorney being
employed by the latter to represent their interests, and the estate aggre-
gating about $18,000.

[Ed. Note.—For other cases, see Executors and Administrators, Cent.
Dig. §§ 448–462; Dec. Dig. ⬅111.]

In the matter of the estate of Isaac P. Bielby, deceased. Proceed-
ings on the judicial settlement of the account of the executrix. De-
creed according to opinion.

F. M. Calder, of Utica, for executor.

A. S. Malsan, of Utica, for contestants James A. Bielby, Anna J.
Slawson, Grace E. Clauson, Bertha S. Teale, and Edna M. Bielby.

James W. Watts, of Utica, for Edna M. Bielby, a minor.

SEXTON, S. The will of the deceased directed his debts to be
paid and then provided:

"I give and bequeath to the children of my brother, William J. Bielby, of
Oriskany, N. Y., all of my property, real, personal or mixed, each of them
to share and share alike.

"Third: I authorize and empower my executrix hereinafter named to exe-
cute any mortgage, deed or conveyance; to give good title to such property,
and carry into effect the provisions of this, my last will and testament: and in
case of her death, I give to the administrator with the will annexed the
same power of sale as the executrix."

Under the advice of an attorney and without objections from any
interested party, the executor sold certain real estate of deceased
through an agent, for full value and free of fraud, and is now ren-
dering her final account. Objection is made to the agent's commis-
sions and executor's commissions on the ground that the will conferred
no power of sale, but, if it did, there was no necessity for its exercise
in order to make the will effective. From the whole will the intent must
be gathered. It is urged that the word "sale" is not used in the lan-

guage in the will constituting the authority upon which the executor acted, but the word "sale" is used in connection with the power conferred upon a contingent administrator with the will annexed; "I give to the administrator with the will annexed the same power of sale as the executor," indicating that the testator believed that he had already conferred a power of sale upon his executor.

It is contended that, the testator having devised all of his property in fee to the devisees named, there was no occasion for the exercise of the power of sale, if any was conferred, as the will contained no provision which required the exercise of the power of sale. The records show that there are eight devisees, children of William J. Bielby, nephews and nieces of the testator, who take under his will, one of whom is a minor. The will is dated June 8, 1911. There are three or four pieces of realty of unequal value, a personal estate of about $8,000, and a total estate of about $18,000.

The testator died in about a year after he made his will. While he then had personal property far in excess of his obligations, still he may have anticipated a dissipation thereof before death, hence empowered his executor to "execute any mortgage" necessary to meet his debts and obligations, as well as the expenses of administration. The executor was given a choice to mortgage any or all of the real estate for the purposes suggested, the devisees to take the same subject thereto, or the executor was given power to sell "such property and carry into effect the provisions of this my last will."

The will contains but two provisions: One, the payment of all just debts; the other, an equal division of "all of my property, real, personal or mixed, among the children of my brother, William J. Bielby." The testator was a lawyer, drew the will in question, and knew that some of his brother's children had families, were money hungry, critical and impatient with each other, and, if they received the real estate with a minor involved, an exhaustive partition action might follow, as there could be no division of this estate into eight equal parts without a sale or partition of the real estate. There may have been method in what is charged as evidence of testator's madness, to wit, devising his real estate, then empowering his executor to sell "such property and carry into effect the provisions of this my last will."

It appears that a brother, as leader, guided by an attorney, aligned himself with four sisters against the executor from the inception of her duties. On the accounting herein, the same five devisees filed objections, attacking eight different items, aggregating $1,403; even the funeral bill of $402.30 of the testator, on whose bounty they are now feeding, did not escape. It was challenged on the ground that it was "excessive and unreasonable." The testator well knew his brother's children, they were all over age but one, and he may have anticipated the course on their part which the record discloses; hence evinced a distinct purpose, through a power of sale, to save his estate from waste by turning over to each one his or her particular share, in money freed of the microbe of litigation and unburdened by attorney's fees.

[1] A general unrestricted power of sale in wills, reflecting such a purpose, has been upheld. In Cussack v. Tweedy, 126 N. Y. 81, 26 N. E. 1033, where the bill under discussion provided, "I hereby authorize and empower my said executors * * * to sell and dispose of the whole or any part or parts of my estate, both real and personal," etc., the court upheld the power upon the ground, among others, that it would facilitate the ultimate division of the estate without the expense and delay of an action in partition. Where the power is unlimited, it permeates and overrides the whole estate, is a doctrine laid down in an English case (Taite v. Swinstead, 26 Beav. 525), and approved in Cussack v. Tweedy, supra.

The following propositions are supported by Taber v. Willets, 1 App. Div. 285, 37 N. Y. Supp. 233; affirmed 153 N. Y. 663, 48 N. E. 1107: A general power of sale given in a will applying to an entire estate, and designed to facilitate its distribution, may coexist with an estate devised in fee. A power of sale is not necessarily repugnant to a previous devise on the subject thereof in fee. Crittenden v. Fairchild, 41 N. Y. 289; Kinnier v. Rogers, 42 N. Y. 531; Cussack v. Tweedy, supra.

[2] There is another feature of the power of sale in question deserving consideration. It is urged that the language used by the testator fails in so many words to confer a power of sale. It is true he does not use the words "sale" or "sell" anywhere in the power conferred upon his executor, but concludes his power of sale as follows: "I give to the administrator with the will annexed the same power of sale as the executrix." The testator, when concluding his power of sale, evidently had in mind that he had conferred upon his executor a power of sale, else he would not have used the language, "the same power of sale." Where the construction of a will is under consideration, or any paragraph of it, the whole will must be used to aid in ascertaining the meaning; the fact that a bequest or devise, or a power of sale, is couched in cloudy language, does not relieve a court from the responsibility of dispelling the clouds and disclosing the sunlight of thought, if any there be. In Cahill v. Russell, 140 N. Y. 402, 35 N. E. 664, the second paragraph of the will under discussion read as follows:

"Until the sale and conveyance of said premises by my executor as hereinafter provided, I give and devise unto my sister, Catharine Denny, the use of the top floor of the house and premises known as No. 227 East Fifty-Second street, New York City, free of rent."

No other or further power of sale was given. In delivering the opinion of the court, Judge Maynard said:

"It is evident that the testamentary plan which the testatrix had formulated in her mind contemplated the grant of a power of sale to her executor. If the form adopted to express her intention is ambiguous or incomplete, the intent nevertheless should prevail. Formal words are not necessary to create a power, and, to quote the language of Sugden: 'However obscurely in a will the intention may be expressed, yet if it appears that a power of sale was intended, a sale will be supported.'"

Gerard on Titles (4th Ed.) p. 430, in the text on the subject of "Powers Inconsistent with Devise," says:

"There has been a question whether a power to sell land by executors, given after a direct and absolute devise in fee, was valid. The general rule is, that a power shall not be exercised in derogation of a prior grant by the appointer. It is held that a power of sale may be exercised, notwithstanding a prior devise of the land in question, in case the power appears necessary to carry out the intention of the testator."

Kinnier v. Rogers, 42 N. Y. 531, in many features parallels the case at bar, and has long been the leading case on the subject of a general discretionary power of sale in this state. The will there considered contained this clause:

"All the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath unto my children living at my decease, and the issue of such  *  *  *  as may then be dead, in representation of its deceased parent, equally, share and share alike forever."

This was followed by a distinct and separate clause appointing three executors, and giving authority and power to them, or such of them as shall qualify, the survivors and survivor of them, to sell all or any part of his real estate at any time, in their or his discretion, at public or private sale, and to execute valid deeds of conveyance for the same to the purchasers thereof. The court held in substance that the testator probably acted in giving the power of sale in reference to the facts and circumstances connected with his family and the ages of his children, and that the exercise of the power would secure a division of the avails among the parties in interest, without the delay and expense of an action in partition, or other judicial proceedings, and the devise was subject to the power, and until it was exercised the title to the land itself remained vested in the children, and after its exercise they took it in its substituted form.

I am constrained to believe that the testator, Bielby, was similarly influenced, and thereby led to grant to his executor a discretionary power of sale. The power of sale given by the testator to his executor was a valid power in trust to convert the land into personalty, and that his executor could convey good title. There having been a sale and conversion of the land into personalty under said power, not only without objections on the part of the present contestants, but with their knowledge, and full value having been obtained for the realty, I hold and decide that the title of the devisees in the land has been divested and an interest in the proceeds substituted. McCready v. Metropolitan Life Ins. Co., 83 Hun, 526, 32 N. Y. Supp. 489.

[3] The item of $125 paid by the executor to Mr. Ackroyd, as commissions for selling a part of the real estate, is under objection. The executor was a woman without experience in business matters or affairs of the world. She, being one of the devisees, was naturally anxious to obtain the highest possible price for the real estate, and, having no knowledge of such matters herself, did what seems to me to be a very natural thing, secured the services of Mr. Ackroyd, of Whitestown, who, though an undertaker, yet had had wide business experience, was a leading and respected citizen of the community, and had served as state senator. It was established that Mr. Ackroyd, as agent for the executor, sold the piece of property in question to the

present purchaser at a price not questioned by the most critical of the contestants. It is not charged that the commissions are excessive, but that, there having been no power of sale in the will, the executor was powerless to incur any legal obligation in connection with the sale of the real estate, but that, if there was a power of sale, then it was the duty of the executor to have made the sale herself.

The accounting party here is the executor selected by the testator, and was his niece. He knew her mental limitations and business experience, yet selected her. From the standpoint of intelligence, and from my observation of her in court and upon the witness stand, I regard her quite the equal of the majority of those who serve in similar capacities. An executor is only required to bring to the discharge of his duties the intelligence which an ordinarily good business man would use in like matters. The rule would be too severe, should the surrogate judge the representative wholly upon the results, or in the light of his present knowledge of what has happened. The representatives should not be judged by the fuller knowledge which they possess upon the accounting, but rather by the knowledge and facts which were accessible to them at the time they made the decision which they were required to make, and for which they are now being criticized. Matter of Watson, 101 App. Div. 550, 92 N. Y. Supp. 195. Few mistakes would be made by representatives if their forethought was as good as their hindthought, and this is equally true of courts, attorneys, and parties who criticize them.

The record shows that the representative's attorney, Mr. Calder, and Mr. Backus, former attorney for the contestant, James A. Bielby, conferred upon the subject of employing an agent, and both agreed that the real estate should be handled by an agent, and it also appears that Mr. Bielby's attorney, Mr. Backus, so informed him. No objection was then made by the contestant, Bielby, to the real estate being handled by an agent; hence he should not now be sustained in his complaint. I therefore overrule the objection to the item of $125 paid to Mr. Ackroyd as commissions for selling the real estate, and allow the same.

[4] It is claimed by contestant James A. Bielby that by objection he has placed in issue the question as to whether his indebtedness to the estate, as set out in the account, can be set off by the executor against any amount directed by the decree to be paid to him, on the ground that, objection having been filed, the burden was on the accounting party to establish the amount of the indebtedness of said James A. Bielby, to the estate. No evidence was given by either side. In Schedule B of the account, the executor separately charges said James A. Bielby with an indebtedness to the estate arising out of a land contract and four notes, together with accumulated interest up to October 1, 1914, in the total amount of $2,059.47. Said contestant Bielby's objection thereto is as follows:

"James A. Bielby, one of the legatees under the last will and testament of the above-named decedent, does hereby object further to the account filed herein by the executor herein, upon information and belief, as follows: (3) That the indebtedness of said James A. Bielby to said estate is not correctly stated in said account."

[5, 6] It is well settled in surrogate's practice that the account filed and objections thereto constitute the pleadings, and determine what issues shall be tried, and limit the examination to such issues. Matter of Heuser, 87 Hun, 262, 33 N. Y. Supp. 831; Matter of Woodward, 69 App. Div. 286, 74 N. Y. Supp. 755; Matter of Sloane, 135 App. Div. 703, 119 N. Y. Supp. 667. Did the contestant, by stating upon information and belief "that the indebtedness of said James A. Bielby to said estate is not correctly stated in said account," raise an issue? Unless there is a denial of that part of the account involving said contestant's interests, then no issue has been raised.

The form of pleading used may be termed a covert negative pregnant—pregnant with the admission of indebtedness, but with the actual amount concealed. The contract and note obligations are not denied, nor is the amount claimed by the estate specifically challenged. The objection states no fact which furnishes any light, and the executor could not be expected to correct any error not pointed out. Objections to an account, to be available, must plainly indicate the defect. Representatives of estates and surrogates have no divining rods to aid in the location of subterranean waters or concealed errors. There is no word of denial in the objection, and no new matter alleged.

"The objector to an account * * * is as much bound to set up in such objections any claims which he proposes to make as the defendant in an action is bound to set up in his answer any claims which he proposes to urge against the plaintiff." Matter of Archibald Johnston, Dec'd (Matter of Hart) 60 Hun, 516, 15 N. Y. Supp. 239.

We therefore have no general or specific denial of the material allegations of the complaint, or account, as provided by the Code of Civil Procedure (section 500). The executor, or accounting party, was not, therefore, bound to prove her account as against the contestant James A. Bielby. Not having been denied, it was admitted. Wallach v. Commercial Fire Ins. Co., 12 Daly, 387. The objection is overruled, and the $2,059.47 must be set off against any sum due said James A. Bielby from the estate, with legal interest from October 1, 1914.

[7] There is another objection filed by the same contestant, which is a very near relative to the one just disposed of. It reads as follows:

"That it appears from said account that the executor has paid to herself more than she is entitled to."

There is no evidence in the record upon this subject, outside of the account itself. If she had paid herself one cent more than she is entitled to, the objection would be true. Still I find, on examination of the account, that if the objection was such as the law contemplates, it must be and is overruled. Schedule G of the account shows a balance of $16,373.84, subject to the executor's commissions and the expense of the accounting, which is the amount that would be subject to distribution to the eight legatees, if no advancements had been made to them. The executor, as appears from Schedule E, has paid to herself $2,252.30. Her net distributive share is $2,046.73, to which must be added $333.73 commissions, making a total of $2,400.46, a sum in excess of what she has received of $148.16. The account of the

executor will be somewhat modified by this contest, but not sufficiently against her to wipe out the balance in her favor of $148.16.

The item of $27.50, paid by the executor to her husband for painting property of deceased at Oriskany, upon the evidence, is allowed.

[8] The objection to the item of $68 paid by the executor for coal which she purchased after testator's death to warm a house of the deceased, occupied by herself and family, from December to the following April, rent free, is sustained, upon the evidence, and her account must be surcharged with said amount.

[9] In regard to the $165 objected to, claimed to have been paid to Irving Slawson by the executor as the balance due on the Rudolph land contract, assigned by Slawson to the deceased in his lifetime, I find by reference to the evidence that the contestants' attorney established the following upon the trial, on cross-examination of said claimant, Irving Slawson: That said claimant assigned the land contract to the testator about August 1, 1912, that at the time of the assignment the deceased paid him $50, that the claimant made no demand for the $165 during the lifetime of the deceased, because the deceased said he would pay him the balance, and the deceased died in about four months thereafter without having paid the same. This evidence is undisputed, and, having been brought out by the contestants' attorney, he is bound by it, and, taken in connection with all the other evidence in the case upon this subject, the executor was justified in paying the same, and the objection thereto is overruled.

[10] The executor kept certain funds in a noninterest-bearing account, which she drew checks against from time to time to meet obligations of the estate. By objection it is sought to have the executor charged with interest on this account.

"The executor or administrator is chargeable with interest, or even compound interest, without reference to the question of delay or negligence, if the moneys have been applied by him to his own use. In all cases where the executor has been held liable for interest on funds in his hands, one or more of the elements or facts of personal use of funds, mingling the same with private moneys, unauthorized investments, failure to follow clear and specific directions as to the disposition of funds, retention of the funds where there was no reasonable excuse for so doing, or other circumstances showing a clear case of negligence, are present; and where these elements are all absent the executor will not be charged interest on money in his hands." Redfield's Law and Practice (4th Ed.) 497, and cases cited.

The evidence discloses none of the conditions above set out, warranting an interest charge personally against the representative. The executor kept an account in the Citizens' Trust Company, at Utica, N. Y., and in the Utica Trust & Deposit Company, both at interest. The principal item withdrawn from the Citizens' Trust Company was $1,000 paid to one of the legatees, Isaac P. Bielby, and the withdrawals from the Utica Trust & Deposit Company, as appears from the exhibits, were to pay the funeral bill and other expenses of administration. There was on deposit with the Oneida National Bank, without interest, $6,160.83, from which $5,975.78 was checked out to different legatees and devisees under the will, and for estate expenses, leaving a balance of $185.05 in the bank.

An executor has a right to deposit in a check account the neccessary money belonging to the estate to meet the current expenses of administration, without being charged with interest. All interest earned by the estate in the different banks has been duly accounted for. No evidence was given tending to establish that by wiser or more frugal management of the estate any more interest could have been earned than appears in the account. The objection is therefore overruled.

The item of $402.30, the undertaker's bill, headstone, and other expenses incurred in connection with the burial of the testator, was objected to as "unreasonable, and not a proper charge against the estate"; but it may be said, in justice to the contestants, that they withdrew all objections on the trial to said item, upon learning the facts in regard to the same.

[11] Objection was filed to an item of $20 paid to Appraiser Ackroyd, upon the ground that it was excessive. A typewritten inventory was filed, showing about 232 items in 11 rooms, each room being separately inventoried, besides some securities and articles of personal property at testator's office in the Law Library, at Court House, Utica, N. Y. The total personal estate, as shown by the inventory, amounted to $8,987.72. Each item was described and value given. In view of the size of the estate and the care shown in the preparation of the inventory, I do not deem $20 an unreasonable charge and allow the same.

There is another matter which, though presenting itself in a very unusual way, still, because of the fact that a minor is involved, attention must be given to it by the court.

[12] The special guardian in a moment of aberration, or wholly misconceiving the practice as to pleadings in this court, filed a general formal answer used in the Supreme Court in partition and other actions, alleging:

"That he is a stranger to all and singular of the matters and proceedings in said petition set forth, and submits his rights as such guardian and of the rights of said minor in the above-named estate to the court for its protection thereof."

There is nothing set forth in the petition involved in this accounting. Apparently the only redeeming feature in the attempted pleading is a frank confession that the special guardian "is a stranger to all and singular of the matters and proceedings." It is the duty of a special guardian, upon his appointment, to cease to be a stranger to all matters involving the minor's interest, and to so inform himself as to the condition of those interests as to be able to intelligently and legally act at all times in court in the infant's behalf. In mitigation of the oversight of the special guardian, it may be said, as a general rule, many attorneys are very competent as specialists, and, when taken out of the field of their general activity and placed at the four corners of the law, they may fail to take the proper highway. While the special guardian failed to comply with the rule laid down in Matter of Archibald Johnston, supra, requiring the objector to set out in such objections any claims that he proposes to make against the administrator, still in a very creditable brief, having called attention to

the lack of provision in the account for interest, which the law provides shall be paid on general legacies after one year, it becomes the duty of the court, as an auditing officer, to act independently before approving and allowing the account, and the court should feel particularly so inclined in the case of a minor or incompetent person. Matter of Parr, 45 Misc. Rep. 564, 92 N. Y. Supp. 990.

[13] It appears from the records of this court that on December 23, 1912, letters testamentary were issued to Christy Ann Slawson. Section 2721 of the Code, before the amendment in effect September 1, 1914, provided:

"No legacy shall be paid by an executor or administrator until after the expiration of one year from the time of granting letters testamentary or of administration, unless directed by the will to be sooner paid."

The will makes no reference to the time for the payment of legacies. It is therefore fixed by statute:

"After the expiration of one year, the executors or administrators must discharge the specific legacies bequeathed by the will and pay the general legacies, if there be assets." Code Civ. Proc., supra.

It therefore appears that after the expiration of one year the legacy is due, and it follows as a matter of law that interest begins to run on a legacy from the time when it is payable. The rights of a legatee are not affected by the fact as to whether the assets of the estate have been fruitful or unproductive. He is in the same position as a creditor, and is entitled to be awarded interest at the legal rate for such time as he is kept out of his demand. Matter of Oakes, 19 App. Div. 192, 45 N. Y. Supp. 984; Hoffman v. Pennsylvania Hospital, 1 Dem. Sur. 118; Matter of Frankenheimer, 195 N. Y. 346, 88 N. E. 374, 133 Am. St. Rep. 803; Matter of Rutherfurd, 196 N. Y. 311, 89 N. E. 820.

The minor, Edna M. Bielby, is now upwards of 20 years of age, and in an apportionment of the household effects she received articles agreed to be worth $34 to apply on her share of the estate. I therefore hold and decide that said infant, Edna M. Bielby, is entitled as legatee and devisee to an equal undivided one-eighth of the net estate herein, less $34, with interest on the balance from December 22, 1913, at the rate of 6 per cent., until November 23, 1914, the return day of the citation on the judicial settlement. This interest date is fixed, because the estate has been involved in litigation since.

The point is made by the special guardian, on behalf of the infant, that the executor advanced to legatees and to herself moneys of the estate before a year had expired after letters testamentary had been issued; hence interest should be charged on the amounts so advanced, from the time thereof until the expiration of the said year, at the rate of 5 per cent. The account shows that the executor advanced to Bertha S. Bielby (now Teale), on account of her share of the estate, $1,000 August 19, 1913, and advanced to Grace E. Clauson, $700 August 7, 1913, $10 September 13, 1913, and $290 September 16, 1913, and to Julius Bielby, $400 October 20, 1913, and to Anna J. Slawson, $1,000 August 11, 1913, and to Isaac P. Bielby, $1,000 October 17, 1913, and to herself, $1,000 March 26, 1913, and $1,200

June 13, 1913. Section 2721 of the Code, in effect prior to September 1, 1914, governs the payment of legacies and provides:

"No legacy shall be paid by an executor or administrator until after the expiration of one year from the time of granting letters testamentary, or of administration, unless directed by the will to be sooner paid."

[14] The will contains no direction as to the payment of legacies; hence no legacy could be legally paid until after the expiration of one year from the time of granting letters testamentary or of administration. It was the duty of the executor to keep the money of this estate at interest. The law is clear upon the subject, and the legatees who received portions of the estate before they were entitled to it are presumed to know the law, and must respectively make the estate good for interest lost by reason of the premature advancements on their shares, as above set forth. It would not be equitable to charge them with more interest than the money advanced to each of them was earning at the time of the advancement, which was 3½ per cent. I therefore hold and decide that interest at 3½ per cent. be deducted as follows: From the share of Bertha S. Bielby (now Teale), on $1,000 from August 13, 1913, to November 22, 1914; from the share of Grace E. Clauson, on $700 from August 1, 1913, to November 22, 1914, on $10 from September 13, 1913, to November 22, 1914, and on $290 from September 16, 1913, to November 22, 1914; from the share of Julius Bielby, on $400 from October 20, 1913, to November 22, 1914; from the share of Anna J. Slawson, on $1,000 from August 11, 1913, to November 22, 1914; from the share of Isaac P. Bielby, on $1,000 from October 17, 1913, to November 22, 1914; and from the share of Christy Ann Slawson, on $1,000 from March 26, 1913, to November 22, 1914, and on $1,200 from June 13, 1913, to November 22, 1914.

[15] Objection was made to the item of $520 paid by the executor to her attorney, Mr. Calder, for legal services, on the ground it was unreasonable and excessive. On the trial, Mr. Calder, under oath, detailed with marked particularity the dates and amount of time spent, as well as the subject under advisement, the services which he rendered to the executor. While it is true that a certain amount of the work is such as a representative generally is expected to perform for commissions, still in this particular case an inexperienced woman was executor, and, with a full knowledge of her lack of business experience, she was selected by the testator to take charge of his estate. The evidence shows that there was considerable friction from the beginning between the representative of the estate and some of the legatees and devisees. An attorney was employed by them, who had conferences with Mr. Calder on various matters, and a sharp question arose as to whether or not the will empowered the executor to sell the real estate. That question had to be disposed of in advance of the judicial settlement, and, as the court views the will, Mr. Calder correctly interpreted it for the executor and rightly guided her in all matters pertaining to the estate, except upon the question of advancing money upon the legacies, and the coal bill of $68, and except one other item of $77, commissions paid to the husband of the exec-

utor for selling a piece of real estate. Over the latter item there was no contest, as it was voluntarily withdrawn as soon as objection was filed.

In an estate composed of personal property and real estate aggregating about $18,000, and concerning the management of which considerable friction arose, and in view of the fact that there were seven different people to contend with, six of whom objected to various items of the account and precipitated a very stubborn contest, resulting in no material change in the account, and also in view of the evidence of Mr. Calder that he agreed with the executor that the sum paid him should be in full for his services, including the accounting and the contest, and that no application would be made for a further allowance, or costs, I hold and decide that the sum of $520 was reasonable, and the same is hereby allowed, and objection thereto overruled.

The account shows that Mr. Ackroyd, the agent who sold the real estate, was paid $126, and the voucher signed by him shows that he received $125. There is a discrepancy of $1 in favor of the executor that she was unable to account for definitely on the witness stand. The account must therefore be surcharged with the same.

During the trial objection was made in open court to the allowance of commissions to the executor, partly on the ground that work which she should have done herself she employed her attorney to do, and on the ground that, there being no power of sale under the will she should not have commissions on the proceeds of the real estate that passed through her hands. On a careful review of the evidence, keeping in mind her conduct and management of the entire estate, as well as the difficulties with which she was constantly confronted, reference to which has already been made, and no specific act of misconduct having been shown, no careless or negligent handling of the moneys of the estate having been established, and no commingling thereof with her personal funds, and no dealing with the property as if it were her own, I feel that on the whole the estate was as well managed as is usual among representatives similarly situated; and, finding no legal reason for denying commissions, I allow the same.

Decreed accordingly.