In the Matter of the Accounting of ELMER MOHLMANN, as Administrator of the Estate of AGNES McC. MOHLMANN, Deceased Substituted Trustee under the Will of FRANCIS McCABE, Deceased.

Surrogate's Court, New York County, January 20, 1950.

*Munder, Weissman & Lockwood* for administrator, petitioner.

*Otho S. Bowling* for Francis E. Mohlmann, as executor of Isabella McCabe, deceased, respondent.

*James P. Hatch,* in person, and for Jacob J. Talbolt, as substituted trustees under the will of Clara Hafner, deceased, as administrators of the estate of Edwin J. Hafner, deceased, and as executors of Rosana C. Hafner, deceased, respondents.

*David L. Schrieber,* special guardian for unknown persons, infants, and incompetents, respondents.

FRANKENTHALER, S. The testator created a trust measured by the life of his daughter Rosana C. Hafner. She is now dead. In this accounting proceeding petitioner asks a construction of the will determining the persons entitled to receive the shares bequeathed " unto the children of [the testator's] daughter, Rosana." At the time of that daughter's death, no lineal descendants of her were living.

When the testator executed his will in 1892 he had three lines of descendants. Three grandchildren were issue of his living daughter Rosana, three were children of a deceased son, and one, Loretta Donlon, was the only child of a deceased daughter. Under the will all three lines of descent were to share equally in the income and in the remainder of the trust. The will provides that upon the death of Rosana, the corpus be divided into three equal parts, one part to be paid " unto the children of my daughter Rosana, then living," one part to be paid " unto the children of my deceased son Eugene, then living " and the last part to be paid to the granddaughter, Loretta Donlon.

Loretta Donlon predeceased the testator. Her only child died in infancy a few years later. All three children of Rosana

predeceased her, leaving no issue. One of the children of Eugene died without issue during the trust term, one child is still living and one survived the termination of the trust and has since died. In respect of distribution of the principal, the will further provides: " If my said granddaughter Loretta Donlon should be deceased at the time of such division, leaving lawful issue, then I give devise and bequeath the share herein devised and bequeathed to her, to such issue; but if she die without such issue, then I give and devise one-half of such share unto the children of my daughter Rosana and the other half thereof I give and devise unto the children of my deceased son Eugene. If either of my grandchildren should die before my daughter Rosana then I give, devise and bequeath the share herein given and devised unto such deceased child to its lawful issue, if any, and if there be no such issue then unto my grandchildren who shall be the brother and sister of said deceased, it being my will that the lawful issue of any deceased grandchild shall in all such cases take the share that his or their parent would have taken if then living."

The will of this testator has been heretofore construed in relation to payment of income after the death of Loretta Donlon. (*Hafner* v. *Hafner*, 62 App. Div. 316, affd. on opinion below 171 N. Y. 633.) The court held that her share of the income was payable to the presumptive owners of the next eventual estate. In respect of ownership of the remainder, it said (p. 326): " The gift to the children of his daughter Rosana is made distinctly to those who shall be living at the decease of his daughter at the time of distribution, and so with reference to the children of his deceased son Eugene. * * * The gift is not immediate, but vests only when the division is made after the expiration of the trust." No one now challenges that construction. Indeed the text of the will permits of no other interpretation. It is accordingly not disputed that the two children of Eugene who survived Rosana are entitled to one half of the remainder, consisting of the one third primarily given to them and the one sixth bequeathed to them in the event of the death of Loretta Donlon leaving no issue surviving the trust term.

In respect of the other half of the fund, it is patent that there is no *express* disposition made by the will in the circumstances which actually eventuated. One third of the remainder was given primarily to the grandchildren in the line of the daughter Rosana and another one sixth was to pass to them in the event that the child of another daughter died with-

out issue. The gift was contingent upon their surviving the trust term. The lines of descent of both daughters became extinct during that period. The only express disposition made in the event of any of these grandchildren dying without issue is that his share should then go " unto my grandchildren who shall be the *brother and sister* of said deceased ". (Emphasis supplied.) There is no brother or sister of any child of Rosana. Hence there are no living persons who come within the class expressly defined.

It is argued on behalf of the children of the deceased son that the testator meant to confine the gift to his living lineal descendants and that there is implicit in the testamentary plan the intent that, in the contingency which has happened, his only living grandchildren are to take the entire remainder. Such an intent cannot be spelled out from the will. The will evidences an intent to provide for the three branches of the family and to maintain equality in interest among them. (*Hafner* v. *Hafner, supra.*) The will contains provisions designed to carry out that intent in all of the circumstances which the testator thought likely to occur. It is admitted that he failed to foresee the possibility that a branch of the family then in fruitful growth would wither and die while the trust continued. What he would have done had he foreseen that contingency is a matter of pure speculation. Perhaps he would have confined his gift to his living lineal descendants. Perhaps, having followed the lines of descent so far and having dealt with apparent possibilities, he would have preferred to let the Statute of Distributions guide the descent in many other remote possible situations that might occur. Perhaps, too, family considerations might have dictated wholly different dispositions in differing circumstances. All of these alternatives involve conjecture and surmise respecting his probable intent in circumstances he never anticipated. The will itself, even when read in the light of circumstances at the time of its execution, furnishes no guide.

The intention of a testator must be revealed in the will itself and its terms " may not be perverted or disregarded in order to give effect to an intention which possibly the testator may have had but which is not revealed by the language used in the will." (*Matter of Nelson*, 268 N. Y. 255, 258.) Our search is " not for the probable intention " of the testator but for the intention which the will declares either expressly or by implication. (*Central Union Trust Co.* v. *Trimble,* 255 N. Y. 88, 93.) The court has no power to construct a new will for

a testator or to create a testamentary disposition which is neither expressed nor reasonably to be implied. (*Dreyer* v. *Reisman,* 202 N. Y. 476, 480; *Leggett* v. *Stevens,* 185 N. Y. 70, 77.) The courts have laid down the rule that " to uphold a legacy by implication, the inference from the will of the intention must be such as to leave no hesitation in the mind of the court and to permit of no other reasonable inference." (*Bradhurst* v. *Field,* 135 N. Y. 564, 568; *Brown* v. *Quintard,* 177 N. Y. 75, 84; *Post* v. *Hover,* 33 N. Y. 593, 599; *Matter of Winburn,* 265 N. Y. 366; *Matter of McClelland,* 59 N. Y. S. 2d 123.) The will of this testator will not support any implication of intent respecting the disposition of this one half of the residuary trust in the contingency which has happened and this share accordingly passes as intestate property. It will vest in those who were the heirs at law and next of kin of the testator at the time of his death.

The court holds further that the will contains a general, unlimited and unrestricted power of sale which survives the termination of the trust and vests in the successor trustees. (*Cussack* v. *Tweedy,* 126 N. Y. 81; *Hutkoff* v. *Winmar Realty Co.,* 211 App. Div. 726; *Matter of McLaughlin,* 193 Misc. 192.) When the property has been liquidated, one half of the proceeds shall be paid to the remaindermen and the other half divided among the living distributees and the personal representatives of the deceased distributees. The compensation of the attorneys for the petitioner will be fixed at the time of settlement of the decree.

Submit, on notice, decree construing the will and settling the account accordingly.