Desmond, J.
The petitioner in this proceeding for an accounting of a testamentary trust asks also for a construction of paragraph Eleventh (A), hereinafter described, of the will of Charles M. Englis who died on January 15, 1926, leaving a will executed .-just about, a year previously, on January 21,1925. .The appeal comes to us on a shortened record. and the details. of fact are not found therein but there are sufficient facts .to pose the construction question. "When testator died he was survived by his widow Maud Louise and by two children John and Ruth Englis. We do not know the ages of these people but there is an indication that the children were quite young at the time of testator’s death.
The other pertinent facts are:
.1. Testator’s widow Maud Louise died on August 24, 1936.
2. Testator’s son John married and survived his mother'but had no children and died on July-8,1953, survived by his widow only.
3. Testator’s daughter Ruth married and survived her mother but died in January, 1943, never having had children, being survived by her widower Roger Whittlesey.
The testamentary provisions immediately up for. construction are as follows:
“ Eleventh: All the rest, residue and remainder of my property real and personal, wheresoever the same-may be situated,'I give devise and bequeath, to my said trustees in-trust, nevertheless, -to hold, manage and invest the same and pay over the net income as follows, viz.:
“ (A) To set aside one half part of the said residuary estate and to pay over the net income thereof to my wife, Maud: Louise Englis, during her life, and upon the death of-my said wife to pay over the net income thereof to my son, John Englis, during his life. Upon the death of my said son, John Englis, I give the *400 principal'of the said one half of said residuary estate to his children, share and share alike, the children of a deceased child of my son to take the share the parent would be entitled to if living. If my said soxi shall leave no issue him surviving, then I give the principal of said one half of said residuary estate to my daughter, Euth, absolutely, but if she shall also be dead at the time of the death of my said son, John Englis, then I give the principal of said one half of said residuary estate to the issue of my said daughter, Euth, share and share alike, the children of a deceased child of my said daughter to take the share the parent would be entitled to if living. * * *
' ‘ ‘ Twelfth: If on the death of my wife both of my said children shall be dead without leaving issue them surviving, then I direct that the principal of the trust funds constituting my residuary estate shall be divided equally among my sisters who shall be living at that time, and the issue of such of them as shall die leaving issue, such issue to take per stirpes and not per capita. ’ ’ Subdivision '(B) of paragraph Eleventh is identical with (A) above quoted except that the second life income beneficiary named in (B) is the daughter Euth. The first-named remainder-men on Euth’s death are her children and the remainderman if Euth should leave no issue is, first, the son John, but if he be dead then his issue. In other words, if we transpose the names of the .son. and daughter, (B) is the same as (A). Since the widow died in 1936 and the daughter Euth died childless in 1943, the question of the disposition of the (A) remainder did not ar ise . until the death of John, childless, in 1953.
. Paragraph Twelfth above quoted says that if on the death of the widow £ £ both of my said children shall be dead without leaving.issue them surviving” then the principal of the trust funds is to be divided equally among the sisters of the testator living at that time or the issue of such sisters as shall have died le'ayihgissue. This contingency (children predeceasing widow) did.not'occur and it is the only event named in the will on the happening of which the sisters or their issue take anything.
"When testator’s daughter Euth died in 1943, the principal of the.trust fund for her benefit passed, of course, to testator’s son John who was still alive. We are not interested in. that trust except as its terms may have a bearing on the construction of the provisions for son John’s trust. W/hen testator’s son John died in 1953 the second trust came to an end. Testator *401 had four sisters. When testator’s son died in 1953, ending the second of the trusts, one only of decedent’s sisters, Bertha D. Sayre, was still alive but although listed in the petition and cited, she did not appear or take any position in the matter. At that time when the second trust fell in on the death of testator’s son John, testator’s three other sisters had already died and each of them was survived by issue.
As already pointed out, the only provision in the will mentioning the sisters or their issue in any manner is in paragraph Twelfth above quoted which says that the sisters or their issue are to take “ If on the death of my wife both of my said children shall be dead without leaving issue them surviving ”. Put another way, the sisters or their issue were to take only on the happening of an event which concededly never did happen, that is, that on the death of testator’s wife both of testator’s children shall have died without issue. Since both testator’s children survived testator’s widow, this provision in favor of the testator’s sisters and their issue never took effect. This situation could not be better described than in the dissenting opinion in the Appellate Division which said, in part (1A D 2d 870, 871):
‘ ‘ The sisters are mentioned but once in the will, and the gift to them is made in the single eventuality which never occurred. That eventuality — death of the wife after the children died without issue — would in all likelihood occur only after a reasonably short interval from the testator’s death. This showed a relatively collateral interest in disposing of the estate to the sisters. It is entirely unlike the situation where the expressed intention of the will is to make a gift, a number of eventualities are stipulated, but the event that did occur is omitted. # * *
“ Thus, the testator’s intentions having been exhausted with respect to the contingencies expressly covered in the will, there is no occasion to speculate what his intention would be, if he had been required to consider the circumstances that have in fact occurred. His sisters were only incidental objects of his bounty. They were not only collateral in blood, but they were collateral in interest. His interest was in his descendants. An omission there might have supplied a ground for an implied gift. But the interest in his sisters did not persist beyond the death of testator’s widow, if, at that time, there were children surviving. Accordingly, there is no occasion- to rewrite the will to benefit such collateral relatives twenty-seven years after the *402 death of testator. (See Matter of Maybaum, 296 N. Y. 201, 205, and Matter of Durand, 250 N. Y. 45.) ”
The majority in the Appellate Division wrote no opinion bnt affirmed the decree of Surrogate’s Court, New York County, which court had held that this will contained a bequest by necessary implication, of the remainder “ to such of the testator’s sisters as were living at the termination of the trust and to the issue per stirpes of any deceased sister. ’ ’ The opinion, of the Surrogate conceded “ that the contingency that actually happened is not explicitly covered by the language of the will.” In other words, the Surrogate was aware that there was .no provision in the will- disposing of John’s trust remainder when John died leaving no issue after his sister had previously died leaving no issue. The Surrogate, however, wrote that the case was one within the theory or rule of bequest by implication as stated in Matter of Selner (261 App. Div. 618, 620-621, affd. 287 N. Y. 664) where “ the property or estate claimed to be -bequeathed or devised by implication, in a contingency which has occurred, has been made the subject of an express bequest or devise in another contingency, which did not occur, then effect may be given to such bequest or devise by implication, in the contingency which. did ■ occur, if * * * the entire will makes manifest that such was the-intention of the testator.” There are, of course, situations where common sense and justice require that the courts.correct situations resulting from obvious error or omissions in wills. Such was the Seiner case. In Seiner the testator left most of his estate to his sons as trustees, the income to go to his widow during life, the will stating that testator was doing this so that the widow would not dissipate the estate during’ her life. The Seiner will then provided that if his wife should predecease testator the remainder should go to the sons but there was no provision .whatever for the disposition of the trust corpus.if the wife should survive her husband. There were. numerous indications in the Seiner will that the testator had as his principal intent that the trust corpus should go to his sons but through an omission he provided for their getting it only if their mother should- predecease testator. We think that was a rare and exceptional case.
Another statement of the rule as to bequests by implication is in Judge Gray’s opinion for this court in Masterson v. Townshend (123 N. Y. 458, 462): “In the construction of a *403 testamentary disposition, where the language is unskillful, or inaeeurate, but the intent can be clearly collected from the writing, it is the duty of the court to give effect to that intent, subject only to the proviso that no rule of law is thereby violated. * * * Courts have, from an early day, repeatedly upheld devises by implication, where no gift of the premises seems to have been made in the will, in formal language. * * * They are justified in so doing whenever such a construction expresses what the testator manifestly intended to express.”
Here we have a testator married and with two young children. Expecting that one or both the children would marry and lxave issue, he provided that after his wife and both his children should have been taken care of during their lives, the remainder of his estate should go in the end to one or both of his children and/or the issue of either of them. He was projecting himself far into the future when he set down that arrangement since he was contemplating what would happen after the deaths of three living people, his wife and his two young children. Having directed that these trust moneys should go in the end either to his surviving child or the children of one or both of his children, if any, he apparently exhausted his testamentary intent. But there was another earlier contingency which as an intelligent man he saw as possible, that is, that before his wife should die both of his children should be dead. In that perhaps unlikely event he wanted the corpus to go to his sisters or their issue. There is not a word in this will that suggests that he ever had. in mind or intended by necessary implication or otherwise that if in the far future both of his children should die (as both did die) married but childless, the corpus would go back to the surviving sisters or their issue. This will differs from those in the various cases cited by the Surrogate in his opinion, in all of which cited cases the people to whom legacies by implication were declared were those who from the whole tenor of the will were in all possibility the ones to whom the testator wanted his estate to go in certain contingencies. In other words, in those cases one could discover a group of people to whom as a group the testator limited his beneficence. We cannot do better in this connection than to repeat what the Appellate Division dissent here said: that this testator’s sisters were only incidental objects of his bounty and that his interest in Ms sisters or their *404 issue was expressed to be only in the event that his own children died before his widow. When both his own children survived his own widow, then his interest or provision for his sisters and their issue simply disappeared. To cite Judge Gray again, this court, in Matter of Hoffman (201 N. Y. 247, 255), said that the intention of a testator is to be ascertained not by what actually occurred long after the execution of his will, but by what was apparently or presumably in his contemplation at the time he was making it. Judge Gray was writing about a case like the present one where the testator neglected to make a provision in the event of his sister and his brother failing to survive him. This court said in the Hoffman case (p. 256): “ This is not a case where the presumption against intestacy is available; it is simply the case of a contingency not provided for and whose happening has left portions of the residuary estate undisposed of.” That is answer enough, we think, to the argument of respondents in this case that the presumption against intestacy is so strong that we should conjure up a legacy by implication.
On this appeal there are three groups of parties and three positions: (1) The issue of the deceased sisters of testator have been successful in both courts below in having it held that the will contains a legacy by implication to them; (2) the appellants-executors of John’s estate argue for partial intestacy and with them we agree; (3) the appellant-executor of Ruth’s estate takes the extreme position — not mentioned in the Appellate Division dissent but a subject of a paragraph in the Surrogate’s .opinion — that paragraph Eleventh (A) above gave to daughter Ruth a vested remainder in the trust for John subject to divestment on the happening of one of these contingencies: death of both John and Ruth without issue prior to the death of testator’s widow; birth and survival of issue of John; or Ruth’s death leaving issue prior to the death of John. It is true that the will says that if John shall leave no issue “then” the principal goes to the daughter but the same paragraph says that if Ruth also shall be dead at the time John dies, without issue, “ then ” the principal goes to Ruth’s issue. The Surrogate correctly said that this merely postponed vesting of John’s trust corpus until John’s death. Ruth’s estate cites section 40 of the Real Property Law as authority but application of that section and the rule it expresses would depend on reading the will in the way she proposes.
*405 This, we think, is a case subject to the rule stated in Matter of Bisconti (306 N. Y. 442, 445; see Matter of Barnes, 2 N Y 2d 787) that there is no power in any court to change the clear and definite words of a will.
The order appealed from should be reversed and the matter remitted to the Surrogates’ Court for further proceedings not inconsistent with this opinion, with costs to all parties appearing separately and filing separate briefs payable out of the estate.
Conway, Ch. J., Dye, Fuld, Froessel, Van Voorhis and Burke, JJ., concur.
Order reversed, etc.