Fuld, J.
Solomon Thall died in September, 1943, survived by Ms wife, a sister and issue of a deceased brother. By a will executed in 1941, he left his residuary estate in trust for the life of his wife with the income to be shared by her and by the testator’s sister Sophie Levitsky and Sophie’s two sons, Emanuel Landis and Ben Ami Landis. Upon the death of the widow, the corpus of the trust, after payment of certain legacies, was to go to Sophie, Emanuel and Ben Ami, “ share and share- alike ”. There then follow these clauses pertaining to the corpus :
“ In the event that my sister Sophie Levitsky shall predecease me or surviving me shall predecease my said wife, I give and bequeath her share to her sons Emanuel Landis and Ben Ami Landis, share and share alike.
‘ ‘ Should either Emanuel Landis or Ben Ami Landis predecease me or predecease my said wife, I give and bequeath the share of the one so dying to his surviving child or children, and if more than one, share and share alike.
“ If either of my said nephews Emanuel Landis or Ben Ami Landis should predecease me or surviving me shall predecease my said wife without leaving any child or children him surviving, I direct that his share shall be paid to his surviving brother. ’ ’
The testator’s widow is still alive. Ben Ami Landis died in 1956, survived by his daughter Barbara Ann. Sophie Levitsky died in 1961, and Emanuel Landis died without issue in 1962.
The will makes no provision for disposition of the income provided for Sophie and her two sons in the event which actually occurred, the death of all of them before that of the testator’s widow, and this hiatus renders a construction of the will necessary at this time. The will likewise fails to provide for disposition of the corpus under the circumstance which in fact came to pass, namely, the death of one of Sophie’s sons without issue after the death of the other son who was survived by a child.
*192 The Surrogate decided that both the net income (after deduction of the widow’s interest) and the entire corpus (excluding certain specific bequests) should be equally divided, one half to Ben Ami’s daughter, Barbara Ann, and one half to those persons who were the testator’s distributees on the date of his death. On appeal, the Appellate Division modified the Surrogate’s decree by providing (1) that all of the net income was payable to the testator’s distributees and (2) that, upon the death of the testator’s widow, the entire corpus should be paid to Barbara Ann Landis. In our view, Barbara Ann is entitled to all of that portion of the net income not payable to the widow and, upon the latter’s death, is to receive the whole of the corpus, except for the specific bequests.
The first rule of testamentary construction, of course, is that a will be interpreted to reflect the actual intention of the testator and the second that this intention be ascertained from a reading of the document as a whole. (See, e.g., Matter of Dammann, 12 N Y 2d 500, 504-505; Matter of Larkin, 9 N Y 2d 88, 91; Matter of Fabbri, 2 N Y 2d 236, 240; Williams v. Jones, 166 N. Y. 522, 532-533.) If a “ general scheme ” be found, it is the duty of the courts to carry out the testator’s purpose, notwithstanding that “ general rules of interpretation ” might point to a different result. (Williams v. Jones, 166 N. Y. 522, 533, supra.)
Corollary to these broad principles is the doctrine that a court may ‘ ‘ give effect to an intention or purpose, indicated by implication, where the express language of the entire will manifests such an intention or purpose ” and the testator has simply neglected to provide for the exact contingency which occurred. (Matter of Selner, 261 App. Div. 618, 620, affd. 287 N. Y. 664; see, also, Matter of Gulbenkian, 9 N Y 2d 363, 370; Close v. Farmers’ Loan & Trust Co., 195 N. Y. 92, 100; Masterson v. Townshend, 123 N. Y. 458, 462.) As the Appellate Division wrote in the Selner case (261 App. Div., at pp. 620-621, supra),
“If * * * the property or estate claimed to be bequeathed or devised by implication, in a contingency which has occurred, has been made the subject of an express bequest or devise in another contingency, which did not occur, then effect may be given to such bequest *193 or deviso by implication, in the contingency which did occur, if a reading of the entire will makes manifest that such was the intention of the testator.”
In the case before ns, the testator’s intent, as manifested in his will, is plain. Outside of assuring his wife a minin-m-m income during her lifetime, his paramount concern was for his sister and her two sons. His widow and his collateral relatives were left no part of the bulk of his estate. Indeed, in his bequests to the latter, token $1,000 gifts, he repeated more than once his direction that their legacies were to lapse if they predeceased him — or his widow, in the case of gifts from the trust corpus. Quite different were the provisions of the testator’s will for his sister and her sons. In addition to receiving that portion of the trust income not bequeathed to his wife, they were to have the entire trust corpus — except for small gifts to collaterals — upon the wife’s death. The testator’s interest in his sister and her sons also appears in other parts of his will, for instance, in his bequests of personal property to them.
In disposing of his residuary estate, it is evident that the testator inadvertently neglected to foresee every eventuality. As indicated, he provided that Sophie’s share, if she predeceased his widow, was to be divided between Emanuel and Ben Ami; that, if either Emanuel or Ben Ami predeceased the widow, the share of the one so dying was to pass to his surviving children, unless he died without issue, in which event his share was to be paid to his surviving brother. Manifestly, the testator expected that Sophie would die before her sons and that each of the sons thereafter dying would be survived by either a child or a brother. However, he failed to anticipate — what actually came to pass — that the second of the sons would die without issue, survived not by his brother but by the latter’s child. Quite obviously, what the testator most desired was that his estate should ultimately go to, and remain within, a particular branch of his family. He could not have intended the descendants of Sophie to be deprived of any portion of his estate by the happenstance that the son (of hers) who was without children died after, rather than before, the son who left offspring. (Cf., e.g., Williams v. Jones, 166 N. Y. 522, 538, supra.) In short, since the testator desired his sister’s descendants to take, there is a necessary “implication” that he did *194 not intend any interest of a grandchild of bers to be defeated by the deaths of Emanuel and Ben Ami, as it were, in the wrong-order. (See, e.g., Close v. Farmers’ Loan & Trust Co., 195 N. Y. 92, 100, supra.)
Quite dissimilar are the cases in which the court has decreed an intestacy where the intent of the testator is not sufficiently clear to permit a bequest or devise by implication. (See, e.g., Matter of Slater, 3 N Y 2d 109; Matter of Englis, 2 N Y 2d 395; Matter of Jay, 1 N Y 2d 897.) In the Jay case (1 N Y 2d 897, supra), for instance, the testator left his residuary estate to his wife for life and upon her death to his issue and, if she died without issue, to his mother or sister or the “ survivor ”. We held that the death of the mother and sister prior to the testator’s widow resulted in intestacy. In that case, however, unlike the present, there was no manifest intention by the testator to preserve for a particular branch of his family the interests of the remaindermen who might predecease the life tenant.[1]
It is our conclusion, then, that upon the death of the testator’s widow the corpus of the trust, except for specific bequests, is to be turned over to Barbara Ann Landis. It is also our conclusion that she is presently entitled, by reason of section 63 of the Beal Property Law, to the income other than the portion payable to the widow. That section provides that, ‘ ‘ When, in consequence of a valid limitation of a future estate, there is a suspension of the power of alienation, or of the ownership, during the continuance of which the rents and profits are undis-posed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate.” It is clear that Barbara *195 Ann Landis is the person “ presumptively entitled to the next eventual estate ”, and, consequently, all of the income not otherwise disposed of Belongs to her. (See, e.g., Matter of Gorham, 283 N. Y. 399, 405; Matter of Tuck, 281 N. Y. 697; Matter of Kohler, 231 N. Y. 353, 376.)
We have considered the other arguments advanced by the several parties and agree with the Appellate Division’s resolution of them.
The order of the Appellate Division should he modified as herein indicated, with costs to all parties filing briefs payable out of the income of the trust in the same manner as the Surrogate’s decree directs the payment of counsel fees and allowances, and, as so modified, affirmed.
Chief Judge Desmond and Judges Van Yooehis, Bxjeke, Scileppi, Beegan and Keating concur.
Order modified in accordance with the opinion herein and, as so modified, affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the income of the trust in the same manner as the Surrogate’s decree directs the payment of counsel fees and allowances.

. The other eases upon, -which the testator’s distributees rely are likewise distinguishable. (See, e.g., Matter of Gautier, 3 N Y 2d 502; Mullarkey v. Sullivan, 136 N. Y. 227.) The wills in Gautier and Mullmkey were also devoid of a testamentary intent to benefit a particular branch of the family to the exclusion of others. In addition, there were at least four remaindermen brothers and sisters in the position of the two Landis brothers herein; the trusts were for their lives and the share of any predeceased brother or sister who died childless was to go to the “ surviving ” brothers and sisters. And, in those eases, when one brother or sister died childless, there was at least one “surviving” brother or sister to take the deceased’s share. The real issue involved the requirement of survival — whether the word “surviving” referred to the life of the testator or of the life tenant — and not the mere disposition of a remainder interest following divestiture.