*376 OPINION OF THE COURT
Bernard Bloom, S.
As an incident to an intermediate trust accounting, Chase Manhattan Bank requests a construction of article third "of the will which governs disposition of the corpus upon the death of the primary life income beneficiary. Edward Heinsimer, as executor and sole residuary legatee under the will of his late wife, who was one of the two intended beneficiaries of the next succeeding estate, joins in the trustee’s petition and cross-petitions for construction of a separate testamentary provision in his late wife’s favor, article fifth.
When testator died on August 19,1927, he left surviving his wife Dorothy and two daughters, Enid, age six, and Miriam, age two. Article third of his will directed that his entire estate (but by article sixth, not to exceed $150,000) be held in trust and the income paid to his wife for life. The principal was to remain intact as long as she lived, subject to the disposition in article fifth as follows: “I direct my executors and trustees hereafter named [his wife, a brother and his attorney] to expend the sum of twenty five thousand thousand [sic] ($25,000.) dollars or a larger sum, if they see fit, out of the principal or accrued interest of the trust funds hereinabove referred to for the benefit of each of my daughters at the time they arrive at the age of twenty-one (21) years or at any subsequent time thereto. Should it be the opinion of my beloved wife that a larger sum is advisable her word is to be final.”
Article third concluded with a directive that the trust for Dorothy’s benefit terminate upon her death “and the funds so remaining be divided into two parts, each part to constitute a new trust fund for the benefit of each of my children and to terminate upon the death of each of my children.” There was no explicit disposition of the trust remainders following the deaths of the secondary life income beneficiaries.
All three nominated executors/trustees qualified and served as such until 1938, when, pursuant to a stipulation of settlement of certain objections to the final accounting of two of the coexecutors interposed by the widow and by a *377 special guardian on behalf of the two infant children, a corporate trustee, of which Chase Manhattan Bank is successor in interest, was substituted.
Testator’s widow outlived testator by more than 52 years. When she died on May 26, 1980, the trust property was valued at about $137,000. Distributions from principal to each daughter totaling $14,000 each had been made at irregular intervals. While Miriam, now Miriam C. Adler, survived, her sister, Enid C. Heinsimer, predeceased their mother, having died on December 15, 1978. Since the will is not explicit as to the effect of these circumstances, it must be determined, first, whether Enid’s surviving husband, as sole residuary legatee of her estate, is entitled to receive $11,000 from the trust representing that portion of the $25,000 sum referred to in article fifth which was not distributed to her during her lifetime and, secondly, what disposition should be made of the trust proper as between the conflicting claims of Miriam Adler to draw income from the entire fund and of Enid’s estate to immediate receipt of one half of the proceeds absolutely.
Respondent Miriam Adler contends that article fifth gave the trustees merely discretionary authority, in contradistinction to a directive, to expend $25,000 or more for the benefit of her sister and herself from the trust established for the life benefit of their mother. This reading stems from the fact that, as a matter of strict grammar, the words “if they see fit” modify the infinitive “to expend” whereas had it been intended that they qualify “or a larger sum”, the proper way to have conveyed that meaning would have been to enclose the latter words in commas. On the strength or debility of that premise, she urges that any predicate to further discretionary payments that might otherwise have been forthcoming to Enid ended at her death, when she could no longer personally benefit therefrom. This result is said to be suggested also by testator’s grant of “the final word” to his widow as to whether a sum larger than $25,000 was advisable.
The line of argument advanced by respondent Heinsimer is more persuasive. The natural sense in which words are used prevails over niceties of punctuation (Kinkele v Wilson, 151 NY 269, 277). “Punctuation may perhaps be *378 resorted to when no other means can be found of solving an ambiguity; but not in cases where no real ambiguity exists except what punctuation itself creates.” (Arcularius v Sweet, 25 Barb 403, 406.) Here there can bé no doubt from the context that testator intended that distributions of at least $25,000 each be made to his daughters on their respective 21st birthdays or at some subsequent time(s). The clause begins “I direct” rather than, for example, “I authorize and empower”, though testator used both these expressions elsewhere in the will in customary fashion. To adopt Miriam’s position would entail a finding that inimical expressions were used in a single sentence, for should “if they see fit” be held to apply to all that precedes it, “I direct” would be stripped of all content. Words in a will are never to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent and significant. (Matter of Buechner, 226 NY 440, 443.) To reconcile the two by construing “if they see fit” to qualify only the immediately contiguous words “or a larger sum” accords with this principle and is compelled by the further fact that testator provided that his wife’s opinion was to be conclusive upon the trustees (of whom three were nominated) should it be her opinion “that a larger sum is advisable.” Indeed, mention of the specific sum of $25,000 would make little sense if expenditures óf principal on behalf of the two daughters had been left wholly to the unfettered discretion of the trustees. Finally, it would seem that recourse to an absent comma is inappropriate when, within the very article at issue, the word “thousand” is inadvertently repeated and an arguably desirable comma fails to appear in the final sentence.
Had either daughter failed to survive her father, or had either died prior to attainment of age 21, much the same question as has arisen with respect to the disposition of the remaining trust funds would be presented. However, neither of those two contingencies having occurred, it must be concluded that Enid obtained a vested right to receipt of the entire $25,000 upon her 21st birthday, if not earlier. As the trustees were empowered to postpone the enjoyment of her bequest indefinitely, Enid could not have enforced payment during her lifetime, and thus had no right she *379 could have lost by waiver. Accordingly, it must be concluded that upon her death, her estate became entitled to receive the $11,000 still owed to her.
The issues concerning devolution of the future interests in the trust are closer and more complex. It is immediately apparent from article third only that one half, at least, of the trust proceeds (exclusive, of course, of the moneys due Enid’s estate representing the unpaid balance of her vested $25,000 legacy) was intended to remain in trust for Miriam’s life. Miriam lays claim to receive income from the half intended for the benefit of her sister as well, but with respect to the remainder interests in the disputed half and in the half of which she is unquestionably intended life tenant, she states at one point that they reside in her estate and at another that they should be deemed to devolve upon her issue.
The latter claim would appear to be more consonant with the general thrust of her mode of reasoning. Her father’s directive that the trust be divided into two parts upon the death of his wife is said to be indicative that the secondary interests were to be held in abeyance pending termination of the primary life estate so as to adapt and proportion them to the conditions then existing. Accordingly, she argues, the income interest meant for Enid which never became possessory should be held to pass to her as surviving sister and the remainder interest in the trust funds, given the constructional preference against a finding of partial intestacy, should be deemed to pass to her estate by virtue of the fact that she was testator’s sole heir upon the date that her mother, the primary life beneficiary, died. A related but distinguishable argument is made for the finding of gifts by implication both of the life income interest intended for Enid and of the remainder interests in the trust funds. This approach would require that the imparting of the secondary income interests “for the benefit of each of my children” be interpreted as evincing an intent to avail testator’s descendants in any degree, that is, issue, rather than “children” in the usual sense of immediate offspring. As Enid had no issue, and as her sole residuary legatee is her surviving husband Edward, who is unrelated to the testator by blood, it is urged that there was an *380 implicit gift over of Enid’s income interest to Miriam and that the remainder interest was likewise implicitly given to Miriam’s issue upon her death. The end result of this line of reasoning differs from that of the first argument in that its acceptance would foreclose Miriam from an opportunity to exercise a testamentary power of appointment over the remainder.
Respondent Heinsimer presents a plethora of alternative arguments. His preferred one is that attempted trusts which bequeath income, authorize use of principal and are without limitation as to duration, of which the secondary trusts at issue are assertedly examples, fail and must be construed as outright gifts of the property. If, however, it should be determined that the trusts designed for Enid and Miriam were effectively created, the remainder of each such trust, he argues, can only be deemed to reside in the estates of the two sisters short of a ruling that a partial intestacy, which is a disfavored result, has occurred, since, contrary to his adversary’s position, there is no hint of a remainder to the surviving issue of a deceased daughter, and if none, to the surviving daughter. In either event, he notes, the existence of the power to invade principal for the benefit of the secondary income beneficiaries is a strong indication that the remainders vested indefensibly at decedent’s demise, as is the direction to the trustees to sever the widow’s trust at her death into separate trusts for each daughter. This result, it is observed, also accords with the constructional preferences for indefeasible vesting and for equality between or among branches of a decedent’s family. The fact that the secondary income interest intended for Enid did not take effect did not destroy her remainder; the first life income interest is to be considered only a preceding limitation, not a preceding condition, and her remainder was accelerated.
Should neither of these parallel arguments find acceptance, Heinsimer proposes that the remainder be deemed to pass by intestacy according to the laws of descent of real property and distribution of personal property in effect on the date of testator’s death. If the court were to rule that the intended secondary income interests were ineffective, and that the remainder of the widow’s trust was undis *381 posed of, one half of the trust assets attributable to real property and one third of those attributable to personal property would be payable to Enid’s estate as one of her father’s two heirs and three next of kin on the date of his death in accordance with the laws of descent and distribution then in effect. All of the rest would be payable to Miriam, part in her own right and the balance under her mother’s will, which left all of her property to her daughters equally, or to the survivor of them. If it should be found that only the remainders of the secondary life income interests were undisposed of, he concludes, Enid’s estate has become entitled to receive one fourth of the assets derived from realty and one sixth of the remaining assets and shall become entitled to like percentages upon the death of Miriam Adler.
It is readily apparent that the hard choice presented is that between finding that the remainders were indefensibly vested in the two daughters’ estates upon their father’s death and concluding that they pass in intestacy; to accede to the argument that Miriam is the recipient of an implied gift over of the life income interest intended for her sister Enid and that her estate, or, in the alternative, her issue, should take the remainder thereof would constitute an unwarranted extension of the doctrine of gifts by implication.
Effect may be given to an intention or purpose indicated by implication “where the express language of the entire will manifests such intention or purpose.” (Matter of Selner, 261 App Div 618, 620, affd 287 NY 664.) There must be such a strong probability of an intention to give the gift that the contrary cannot be supposed (Post v Hover, 33 NY 593, 598; Matter of Selner, supra, p 622) or, phrased somewhat differently, “the inference from the will of the intention' must be such as to leave no hesitation in the mind of the court and to permit of no other reasonable inference” (Bradhurst v Field, 135 NY 564, 568; Matter of McCabe, 197 Misc 851, 855.)
In most of the instances in which an argument for finding a gift by implication proved successful, the property claimed to be so given was the subject of an express bequest or devise covering a contingency from which the *382 intendment of the testator with respect to the events which did, in fact, occur was deemed manifest. (See, e.g., Matter of Thall, 18 NY2d 186; Close v Farmers’ Loan & Trust Co., 195 NY 92; Masterson v Townshend, 123 NY 458; Matter of Selner, supra; Matter of Cutter, 5 Misc 2d 737, affd mem 4 AD2d 966, affd 5 NY2d 1018; Matter of Nield, 42 Misc 2d 1010.) It was made clear in Matter of Englis (2 NY2d 395) and in subsequent decisions of the Court of Appeals (Matter of Slater, 3 NY2d 109; Matter of Jay, 1 NY2d 897), however, that an implied gift theory should not be invoked as a matter of course in every analogous case but only in rare and exceptional instances.
Englis (supra) is of particular interest here since a remote contingency that had been left unprovided for occurred and forced a choice between awarding a remaindér interest in a trust to blood relatives or permitting surviving spouses of deceased children to share through intestacy. In that case testator died in 1926 survived by his widow and son and daughter. The disposition at issue placed one half of the residuary estate in trust for the wife for life, with the son to receive a secondary life income interest and the remainder to be paid upon his death to his issue per stirpes. If the son died without issue then living, the remainder was to be given to his sister if then alive and, if not, to her issue per stirpes. The other half of the residue was placed in a second trust with identical terms except that the names of the son and daughter were transposed. With respect to both trusts, testator provided that if upon the death of the widow both of the children were dead and had left no issue surviving them, the corpus was to be divided among his sisters then living and the issue of any sister who may have died. The widow died in 1936, followed by the daughter in 1943, who left a spouse but no descendants. When the son died in 1953, also having been survived by his spouse but no issue, there was no provision with respect to the remainder in the first trust which fitted the precise contingency of failure of the daughter to survive the son or leave issue where both had survived the widow. The contention that the remainder had been bequeathed by implication to testator’s sisters or their issue was rejected on the ground that he may well have intended *383 his literal meaning that would have permitted them to receive the corpus only in the single eventuality that both children should die without issue prior to his widow’s death, an event which presumably would have occurred a relatively short time following his own. Accordingly, testator was deemed to have exhausted his testamentary intent and the remainder interest was held to pass in intestacy, thus inuring largely to the benefit of the spouses of the children rather than to blood relatives exclusively.
There is far less merit to Miriam’s claim to a gift by implication than that of testator’s sisters and their issue in a losing cause in Englis (2 NY2d 395, supra), much less than those of the prevailing parties in the cases upon which she relies. Unlike each of those latter instances, there is no gift over here covering any contingency whatever from which an irresistible, or even confident, conclusion might be drawn to the effect, first, that testator intended that upon Enid’s death prior to her mother’s, Miriam was to receive the income from the entire trust principal, and, second, that the remainder in the entire corpus should pass upon Miriam’s death either to her estate or to her issue. Nor are any other indicia presented which would furnish a basis for either conclusion. The contention that the description of the secondary life income interests as “for the benefit of my children” should be read to support both is utterly spurious; with respect to the second proposition, in particular, it suffices to note that the word “children” is not to be construed to include grandchildren and more remote issue unless the will as a whole evinces that unmistakable intent. (Matter of Villalonga, 6 NY2d 477; Matter of Schaufele, 252 NY 65.)
It is evident from the language of article third that it was intended that upon the widow’s death, the original trust fund was to be divided in two, each new trust to furnish income to testator’s daughters for the remainder of her lifetime. Respondent Heinsimer has invoked a long line of cases to support the proposition that notwithstanding the undeniable purpose to create secondary income interests, both attempted trusts fail of accomplishment and must be construed as outright gifts of one half the corpus of the widow’s trust to each daughter following their mother’s *384 demise. The cited authorities and others (see, e.g., Matter of Forde, 286 NY 125; Mee v Gordon, 187 NY 400; Crain v Wright, 114 NY 307; Hatch v Bassett, 52 NY 359; Matter of Feldhus, 165 Misc 122, affd 254 App Div 902, affd 280 NY 568; Matter of Franze, 251 App Div 837; Matter of Hull, 97 App Div 258; Matter of Ingersoll, 95 App Div 211; Matter of Weinstein, 175 Misc 437; Matter of Harris, 138 Misc 287; Matter of Putnam, 112 Misc 315; Matter of Dibble, 76 Misc 413; Earl v Grim, 1 Johns Ch 494) do indeed establish the rule that a gift of income from personal property or profits of real property without durational limitation of the gift constitutes an absolute gift of the property free of trust where no disposition of the remainder interest is made. However, this rule has been allowed to control solely where it is doubtful where the use only or absolute ownership was intended to be conveyed; “where the intention of testator to give only the use is clear, manifest and undisputed, the rule must yield to the stronger force of intention”. (Paterson v Ellis, 11 Wend 259, 298; Locke v Farmers’ Loan & Trust Co., 140 NY 135, 146; Matter of Hull, supra, p 266; Matter of Olmstead, 131 Misc 238; see, also, Matter of Feldhus, 165 Misc, at p 124). When the will describes the gift as one for the “lifetime” or “natural life” of the beneficiary, such phrasing has been held to constitute a durational limitation inconsistent with an outright gift notwithstanding the fact that disposition of the remainder interest was omitted. (Crain v Wright, supra, p 311; Mee v Gordon, supra; but see Matter of Forde, supra; cf. Matter of Horton, 160 Misc 64.) In such cases, the trust has been deemed effective and the remainder has variously been held to be vested in the trust beneficiary’s estate (Vernon v Vernon, 53 NY 351; Matter of Sackett, 201 App Div 58), to pass to the residuary legatees (Matter of Frayer, 155 Misc 811, affd 246 App Div 703) or to be distributable in intestacy (Matter of Vogel, 164 Misc 916); no merger results from the circumstance that the income beneficiary’s estate is the recipient of the trust remainder, whether the remainder is deemed to pass under the will (Matter of Carney, 73 Misc 2d 579) or in accordance with the law of intestate distribution (Connolly v Connolly, 122 App Div 492).
*385 As the provision in the instant will that each secondary trust is “to terminate upon the death of each of my children” appears to be the logical equivalent of a gift of the benefit of a trust to each for her lifetime, it must be concluded that the secondary income interests are not facially invalid and that the secondary trust directed to be established for Miriam’s benefit should be implemented. Thus, it remains only to be determined whether there is an implied remainder to each daughter’s estate or whether each remainder passes in intestacy.
Arguments of considerable force can be mustered on each side of the question whether the remainder interests in the two segments of the trust fund (exclusive of unpaid portions of the vested $25,000 legacies) should be held to have vested by implication in both intended secondary life income recipients upon their survival of their father or whether they should be held to pass in intestacy upon the death of each daughter.
Testator directed that the trusts for his daughters were to terminate “upon the death of each of my children.” The presence of this express reference to the expiration of their trusts shows that at the time the will was drawn, he had in conscious prospect the presumably remote dates in the future when each of his daughters, then children of tender years, would die. Given this phrase, the likelihood that his failure to dispose expressly of the remainders is ascribable to actual exhaustion of his testamentary intent at that juncture is somewhat enhanced vis-a-vis the proposition that it was the product of mere, remediable unfamiliarity with the legal argot customarily used to create indefeasible remainder gifts subject to life income interests in favor of the remaindermen. Moreover, inclusion of that language explicitly terminating each secondary trust upon its beneficiary’s demise causes the gifts to Enid and Miriam to bear literal semblance to the residuary provision for their mother, which indubitably carried only a life income interest.
On the other hand, the fact that the trustees were authorized to invade principal on behalf of the secondary income beneficiaries is an indication that testator intended to vest the principal in them absolutely (see Goebel v Wolf, *386 113 NY 405; Matter of Latsi, NYLJ, Oct. 12, 1982, p 15, col 4), as is the fact that discrete portions of the estate were set apart for the benefit of each daughter (see Fulton Trust Co. v Phillips, 218 NY 573; Goebel v Wolf, supra). There is no incongruity in a finding that the recipient of an income interest measured by his life takes a vested remainder upon the expiration of the trust term which can only vest in possession in his intestate distributees or devisees and legatees. (Matter of Watson, 262 NY 284; Cammann v Bailey, 210 NY 19, rearg den 210 NY 555; Goebel v Wolf, supra; Matter of Krivan, 32 AD2d 551; Connolly v Connolly, 122 App Div 492, supra; Felter v Ackerson, 35 App Div 282; Matter of Leonard, 143 Misc 172.)
In the face of these competing interpretations both of which are plausible, recourse to canons of construction is appropriate to guide the inevitable choice. One of the most familiar and oft-applied of these is the preference favoring complete testamentary disposition. “ ‘The idea of any one deliberately purposing to die testate as to a portion of his estate, and intestate as to another portion, is so unusual in the history of testamentary dispositions, as to justify almost any construction to escape from it’ ” (Matter of Hayes, 263 NY 219, 225) and the presumption against a partial intestacy is particularly strong where the breadth of a residuary disposition, of which the present instance is an example, is at issue (Fulton Trust Co. v Phillips, supra; Matter of Birdsell, 271 App Div 90, affd 296 NY 840).
While it is said that the natural preference for complete disposition should not be invoked where it would involve the court in constructing, as opposed to construing, the will, to raise such an objection here" would only beg the question as the ultimate issue is reducible to the query whether the remainders vested implicitly in Enid and Miriam or whether the absence of their express disposition constitutes an incurable omission. If the will itself were devoid of indicia of implied remainders, invocation of the presumption against intestacy to create, rather than effectuate, them would indeed merit the charge of judicial will-making. It is, however, only after having decided that the argument for finding implied remainders is of equal weight to that in favor of partial intestacy that the canon *387 favoring complete testacy has been considered. The court finds it to be dispositive.
Accordingly, after payment of the undistributed portion ($11,000) of Enid’s vested $25,000 legacy plus interest at the rate of 3% per annum to her estate (see EPTL 11-1.5, subd [d]) from December 15, 1978, and after setting aside $11,000 representing the unpaid portion of Miriam’s $25,000 legacy, the trustee is directed to distribute one half the balance of the funds existing at the time of Dorothy Cedar’s death on May 26, 1980, plus interest at 3% per annum, to Enid’s estate. The trustee is further directed to hold the remaining half of the funds, together with the $11,000 due Miriam, in trust to furnish income to Miriam for life. Upon her death, the trust shall terminate and its funds shall be paid to her personal representative.