In the Matter of the Estate of STELLA R. BELLOWS, Deceased. STEPHEN D. BELLOWS et al., Appellants; VERA D'ARAGON et al., Respondents.

Second Department, October 29, 1984

APPEARANCES OF COUNSEL

*Barry A. Wadler* (*Ann Armstrong Fruman* of counsel), for appellants.

*John Peter Sipp* for Vera D'Aragon and another, respondents.

OPINION OF THE COURT

BOYERS, J.

Testatrix, Stella Reynolds Bellows, died on December 21, 1924, survived by her husband Charles M. Bellows, and their three children, Margaret Clark, Donald Bellows and Reynolds Bellows.

By a will executed in 1917 and a codicil executed shortly before her death, the testatrix created three separate trusts. When her estate was appraised in 1925, it was determined that at the time of her death, there was no property of the nature described in the first two trusts, thereby rendering them inoperable. Accordingly, the entire estate, which the executor found to have an appraised value of approximately $670,000, being derived mainly from gifts from the testatrix' father, James E. Reynolds, and the liquidation of her holdings in the firm of J.E. Reynolds & Co., was to be distributed pursuant to the residuary provisions of the third trust set forth in paragraph FIFTH of the testatrix' will, as modified by the subsequently executed codicil.

Pursuant to this fifth paragraph, a trust of "the rest, residue and remainder" of the testatrix' estate was created "for the following uses and purposes":

"To invest, re-invest, and keep the same invested, and to pay so much of the net income derived therefrom as together with the income from any other trust created by this my Will shall equal the sum of Five Thousand Dollars ($5,000) during the lifetime of my said father, to my said husband, CHARLES M. BELLOWS; and the surplus of said net income, if any, to my said children share and share alike.

"Upon the death of my said father, if the income from my entire estate shall then equal or exceed the sum of Twenty Thousand Dollars ($20,000) per annum, I direct that so much of the income from my said residuary estate as together with the net income from any other source whatsoever under this my Will, shall equal the sum of Ten Thousand Dollars ($10,000) per annum, be paid to my said husband, CHARLES M. BELLOWS, during the term of his natural life, and the balance of said income in excess thereof, if any, shall be paid to my said children share and share alike during the lifetime of my said husband.

"Upon the death of my said husband, Charles M. Bellows, I direct that the principal of my said residuary estate be divided into as many equal shares or parts as I may leave children *my* surviving, and that the income from one of said shares or parts to be paid to each of my said children for and during the term of her or his natural life; and upon

the death of any of my said children, I direct that the principal share so held or to be held, in trust for the one so dying, be paid to his or her issue, or, if he or she die [*sic*] without issue, then that the principal of said fund so held in trust for the one so dying be divided equally between his or her surviving brothers or sister."

The testatrix' husband, Charles, died in 1952, and the trust continued, pursuant to paragraph FIFTH of the will, for each of the testatrix' three children. At the time of siblings Margaret and Reynolds' deaths, in 1969 and 1970, respectively, the shares of the trusts held for them were paid to their children, as per the will. The last of the testatrix' children, Donald, died on February 21, 1981, leaving neither issue nor surviving brother or sister.

A review of the testatrix' will and the codicil demonstrates that she failed to anticipate the exact contingency which arose, namely, the demise of her last surviving child without issue or living siblings. In May, 1981, Citibank, N. A., as trustee, apparently assuming that the testatrix intended that the corpus of the residuary estate trust created for her son Donald, as income beneficiary, would pass to the issue of Donald's surviving brother and sister, distributed half of the remaining principal to the testatrix' five grandchildren (Donald's nieces and nephews), the appellants herein, specifically Margaret's three children, and the two children of Reynolds. At that time, each grandchild received $14,000, making a total sum of $70,000 paid on account of distribution. Objections to this distribution were subsequently raised by Mary Whitnell, who was appointed in March, 1966 as the executrix of the estate of the testatrix' husband's second wife, Elizabeth Peck Bellows, and Vera D'Aragon, the executrix of Donald's estate,[1] it being their position that the remainder of the residuary estate trust should be distributed as intestate property. In December, 1981, Citibank, N. A., as trustee, filed its final account, petitioned for judicial settlement and requested that the Surrogate construe paragraph FIFTH of the will and more particularly the last paragraph thereof and determine whether the corpus of the trust created for Donald

---

1. Charles Bellows' second wife was survived by issue from an earlier marriage. Executrix Mary Whitnell is her daughter. Executrix Vera D'Aragon was a friend of Donald Bellows and is a beneficiary of his estate.

Bellows should pass under the laws of intestacy or whether it was payable to the issue of Margaret Bellows Clark and Reynolds Bellows.

Finding that the testatrix' will contained neither an express provision for the distribution of the corpus of the trust if the last of her children to die was not survived by issue nor other indicia from which it could be implied that the testatrix intended to name her grandchildren as contingent remaindermen to take in the event their uncle died without issue, the Surrogate directed that the undistributed portion of the residuary estate trust "be distributed as intestate property among decedent's date of death distributees in the manner provided for by the statute of descent and distribution in effect at the date of testatrix [*sic*] death". For the reasons discussed below, we reverse.

It is beyond cavil that the primary rule of construction is that a will should be read so as to reflect the testator's actual intent unless contrary to law or public policy (7 Warren's Heaton, Surrogates' Courts [6th ed], § 16, par 1; § 17, par 1 [d]). Intent is not to be gleaned by focusing upon any one particular word, sentence or provision; rather, it must be ascertained from a perusal of the entire will by a reader mindful of the particular facts and circumstances under which the provisions of the instrument were framed (*Matter of Thall,* 18 NY2d 186, 192; *Matter of Larkin,* 9 NY2d 88, 91; *Matter of Fabbri,* 2 NY2d 236, 240; see, also, *Matter of Jones,* 38 NY2d 189, 193; *Matter of Kosek,* 31 NY2d 475, 483; *Matter of Flyer,* 23 NY2d 579, 584). Where a general testamentary scheme can be established from such a reading, it is the court's duty to afford such purpose force and effect even if a "literal reading of the portion under construction might yield an inconsistent or contradictory meaning" (*Matter of Fabbri, supra,* p 240; see, also, *Haug v Schumacher,* 166 NY 506, 513; *Williams v Jones,* 166 NY 522, 533; *Roe v Vingut,* 117 NY 204, 212).

Corollary to this first rule of testamentary construction is the equally well-established principle that a court "may 'give effect to an intention or purpose, indicated *by implication,* where the express language of the entire will manifests such an intention or purpose' and the testator has simply neglected to provide for the exact contingency

which occurred. (*Matter of Selner,* 261 App. Div. 618, 620, affd. 287 N. Y. 664; see, also, *Matter of Gulbenkian,* 9 NY 2d 363, 370; *Close v. Farmers' Loan & Trust Co.,* 195 N. Y. 92, 100; *Masterson v. Townshend,* 123 N. Y. 458, 462.)" (*Matter of Thall,* 18 NY2d 186, 192, *supra.*)

As Justice Carswell, formerly of this court, has observed with respect to a gift by implication: "A court may not give effect to a supposed intention of a testator which finds no expression in a will; but a court may give effect to an intention or purpose, indicated by implication, where the express language of the entire will manifests such an intention or purpose. The rule is easy of statement but its application is frequently provocative of controversy" (*Matter of Selner,* 261 App Div 618, 620, affd 287 NY 664).

While gifts by implication are ordinarily not favored (see, generally, 7 Warren's Heaton, Surrogates' Courts [6th ed], § 25, par 1 [a]), such dispositions are sustainable where there is such a strong probability of an intention to give the gift that a contrary intention cannot be supposed (*Matter of Selner,* 261 App Div 618, 622, affd 287 NY 664, *supra;* see *Bradhurst v Field,* 135 NY 564, 568; *Post v Hover,* 33 NY 593, 598; see, also, 2 Page, Wills [3d ed], § 930; Thompson, Wills [3d ed], § 233).

In *Matter of Thall* (*supra*), the testator, who died in 1943, left his residuary estate in trust for the life of his wife, the income from which was to be shared by his wife, his sister and her two sons, the testator's nephews. The will provided that, upon the death of the testator's widow, his sister and nephews were to receive the bulk of the corpus of the trust. Considering, *inter alia,* possible contingencies with respect to the corpus, the testator provided that in the event his sister predeceased his wife, his two nephews would receive their mother's share; if either nephew predeceased the testator or his widow, the nephew's surviving children would take his share, and finally, if either nephew predeceased the testator's widow leaving no issue, the surviving nephew would receive his brother's share (18 NY2d 186, 191, *supra*). The testator's wife survived; however, one nephew died in 1956 survived by a daughter, the sister died in 1961 and the other nephew died without issue in 1962 (18 NY2d 186, 191, *supra*). Among other things, the

testator failed to anticipate the contingency which occurred, namely, the death of one nephew without issue survived not by his brother, but by his brother's issue. Nevertheless, the Court of Appeals found the testator's intent sufficiently clear to find, upon the death of the widow; a gift by implication of the corpus to the testator's grandniece, stating: "since the testator desired his sister's descendants to take, there is a necessary 'implication' that he did not intend any interest of a grandchild of hers to be defeated by the deaths of Emanuel and Ben Ami [testator's nephews], as it were, in the wrong order. (See, e.g., *Close v. Farmers' Loan & Trust Co.*, 195 N. Y. 92, 100, *supra.*)" (*Matter of Thall*, 18 NY2d 186, 193-194, *supra.*)

*Matter of Selner* (261 App Div 618, *supra*) is also instructive. In that case, the testator left the·bulk of his estate to his three sons, as trustees, with a direction that his widow receive the entire income therefrom for life, explaining that his widow was to receive the income only in order that the estate not be dissipated during her life. The testator failed, however, to provide for disposition of the corpus of the trust should his wife survive him (*Matter of .Selner, supra,* pp 619-620; *Matter of Englis,* 2 NY2d 395, 405). The testator did provide that in the event his wife predeceased him the corpus was to go to his three sons. The testator predeceased his wife, who died eight years later after the death of one son (*Matter of Selner, supra,* p 620). Reversing a decree holding that the testator died intestate as to the corpus of his residuary estate, this court found that the testator had, by implication, bequeathed the corpus of the remainder to his sons. Where "the property or estate claimed to be bequeathed or devised by implication, in a contingency which has occurred, has been made the subject of an express bequest or devise in another contingency, which did not occur, then effect may be given to such bequest or devise by implication, in the contingency which did occur, if a reading of the entire will makes manifest that such was the intention of the testator" (*Matter of Selner,* 261 App Div 618, 620-621, affd 287 NY 664, *supra*). As our Court of Appeals has opined, *Selner* was "a rare and exceptional case", a situation "where common sense and justice require that the courts correct situations resulting

from obvious error or omissions in wills" (*Matter of Englis,* 2 NY2d 395, 402, *supra*). Nevertheless, "[i]n the construction of a testamentary disposition, where the language is unskillful, or inaccurate, but the intent can be clearly collected from the writing, it is the duty of the court to give effect to that intent * * * Courts have, from an early day, repeatedly upheld [gifts] by implication, where no gift of [property] seems to have been made in the will, in formal language * * * They are justified in so doing whenever such a construction expresses what the testator manifestly intended to express" (*Masterson v Townshend,* 123 NY 458, 462, *supra*).

In addition to the rule as to intention, there are other relevant, albeit subordinate, principles of construction. For example, there is the fundamental rule favoring testacy over intestacy (*Matter of Winburn,* 265 NY 366, 375), and once executed a will creates the presumption that it was the testator's intent to dispose of his entire estate (see *Matter of Dammann,* 12 NY2d 500, 504). Accordingly, it cannot be lightly assumed that the testatrix Stella Reynolds Bellows intended to die intestate as to any part of her property (*Matter of Gautier,* 3 NY2d 502, 510; *Matter of Fabbri,* 2 NY2d 236, 243, *supra*). Also relevant is that apart from the rule as to intention, "Heirs of the blood should be preferred to strangers * * * and this presumption prevails in favor of descendants as against collaterals" (*Matter of Larkin,* 9 NY2d 88, 92, *supra*).

The facts presently before us readily raise a firm presumption of a gift to the testatrix' grandchildren, by implication, of the remainder of the residuary estate trust at issue. Indeed, no contrary intent can be supposed. Such conclusion logically flows from a perusal of the testamentary instrument as a whole and the testatrix' clear intent expressed therein: to dispose of her entire estate and not to have any portion fall into intestacy, and apart from a relatively small amount of income, to benefit her direct blood descendants only. The corpus of each of the trusts created by the testatrix was eventually to be distributed to her children, and upon the demise of any child, to the issue thereof. Should a child die without issue, the principal of

the trust was to be distributed to his or her surviving brother or sister.[2] An inspection of the two failed trusts is instructive. They read:

"THIRD: Whereas I have heretofore received from my father, James E. Reynolds, certain stocks and bonds, which have been deposited in my safe deposit box in a separate parcel plainly marked, from which I have always paid him the income, I now give, devise and bequeath to THE PEOPLES TRUST COMPANY, of the Borough of Brooklyn, City of New York, all the stocks and bonds contained in said parcel, IN TRUST, NEVERTHELESS, to invest, re-invest and keep the same invested, and to pay the net income derived therefrom to my said father, JAMES E. REYNOLDS, for and during the term of his natural life; and upon his death I direct that, if the entire net income derived therefrom, together with all other net income derived from the balance of my estate, shall equal the sum of Twenty thousand Dollars ($20,000) per annum at that time, then so much of the income derived from said trust fund as together with the income hereinafter devised to my husband shall equal the sum of Ten thousand Dollars ($10,000) per annum, shall be paid to my said husband, CHARLES M. BELLOWS, for and during the term of his natural life and the balance of the net income from said trust fund, if any, to my children share and share alike; but if at the time of the death of my said father the net income from my entire estate shall not equal the sum of Twenty thousand Dollars ($20,000) per annum, all of the net income from the said trust fund shall be paid to my children share and share alike during the lifetime of my said husband.

"Upon the death of the survivor of my said father or husband I direct that the principal of said trust fund, together with any accumulations of income, shall be paid over to my said children share and share alike, the issue of any deceased child to take the share the parent would have taken if living; and if any of my said children shall have died without leaving issue I direct that the share of the one

2. As may be seen, the will is somewhat ambiguous in portions. While the inoperable trust created by the third paragraph disposed of principal designated for a child dying without issue to the "survivors of my children", the trusts created by the inoperable fourth paragraph and the operable fifth paragraph use the language "surviving brothers or sister".

so dying shall be divided equally among the survivors of my said children.

"FOURTH: I give, devise and bequeath to said THE PEOPLES TRUST COMPANY, all moneys and interest which I may have invested in the firm of J.E. Reynolds & Co., of the Borough of Manhattan, City of New York, at the time of my death, IN TRUST, NEVERTHELESS, to withdraw the same from said firm as soon after my death as may be practicable, and to invest, re-invest, and keep the same invested, and to pay the net income derived therefrom to my said husband, CHARLES M. BELLOWS, for and during the term of his natural life.

"Upon the death of my said husband Charles M. Bellows, I direct that said trust fund be divided into as many shares or parts as I may leave children me surviving, and that the net income derived from one of such share or parts be paid to each of my said children for and during the term of their respective lives.

"Upon the death of any of my said children I direct that the principal of the share so held in trust for the one so dying shall be paid to his or her issue; and if any of my said children shall die without issue, the principal of such share shall be paid over to his or her surviving brothers or sister share and share alike."

On the other hand, the testatrix' husband Charles was provided with a life income only. This income was considerably cut by a codicil, dated December 3, 1924, a mere 18 days prior to the testatrix' death and admitted to probate over the objection of her husband. Stating in part: "[I]n view of the fact that in my opinion my said beloved husband has made several unfortunate and ill advised investments during the eighteen months immediately last past and having high regard and affection for my said beloved husband, and desiring that by no circumstance he shall at any time after my death be in want or have insufficient funds for his adequate support and maintenance", the testatrix, in the codicil, substantially reduced (from $10,000 to $6,000 per year) the income provided her husband by the obsolete paragraph three of her will. She explained: "I have in mind that the sum of Six Thousand ($6,000) Dollars, together with the funds and property

which is [sic] now in the separate estate of my said husband, will be sufficient under ordinary circumstances. In the event of ill health, sickness, misfortune, financial or otherwise, I have full confidence and trust and rest easy in the assurance that my beloved children will at all times see that their father is amply provided for out of the funds or property which they derive from my estate."

Perhaps most instructive of all as to the testatrix' intention concerning her husband and her desire that only her children or their lineal descendants take the bulk of her estate may be found in the sixth paragraph of the will, which reads:

"SIXTH: All of the foregoing bequests for the benefit of my said husband, Charles M. Bellows, are made *for his benefit during his life, or so long as he shall remain unmarried, or shall not undertake the support, maintenance and housing of any of his relatives other than our children, or their lineal descendants;* and in the event that my said husband shall remarry, or shall support or maintain a home for any persons other than our children, or their lineal descendants, I direct that the total income to be paid to my said husband under the several trusts hereinbefore mentioned, shall not exceed the sum of Three thousand Dollars ($3,000) per annum, which is the amount upon which he and I lived during the first years of our married life; and in such event all surplus income from said trust funds theretofore paid to my said husband shall be distributed equally among my said children share and share alike, during the terms of the several trusts hereinbefore created, anything hereinbefore to the contrary notwithstanding.

"This provision is made in the hope and belief that my husband will understand the motives prompting me, since *it has ever been our aim and purpose to provide for the welfare and happiness of our children, and to direct our efforts and finances to that end;* and if it shall so happen that our children shall not receive any income, or sufficient income from my estate during the lifetime of my father and husband respectively, with which to support and maintain themselves in the manner to which they have been accustomed, I feel confident that my husband will maintain and

provide a home for them so long as they shall desire to live therein with him" (emphasis supplied).

Thus, all gifts to Charles Bellows were for his benefit during life only on condition that he remained unwed (marriage would reduce the total income from all sources to $3,000 per year) and did not undertake the support, maintenance or housing of persons including any of his relatives except the testatrix' children or their lineal descendants. Given the testatrix' explicitly enunciated purpose in the will, read as a whole, that the bulk of her estate enure to the benefit of her children or their lineal descendants, and given a comprehensive reading of the provisions written to effect such goal, it cannot by any interpretation be inferred that the testatrix intended that any portion of her estate, such as the corpus of the trust created for her son Donald, fall into intestacy.. Pursuant to the applicable rules, such event would result in a distribution of one third to the estate of the testatrix' husband's second wife, two ninths to the estate of the testatrix' son Donald Bellows to the benefit of the latter's friend, a "stranger" to the Bellows' family, and a mere two ninths to each of the estates of the testatrix' children with issue surviving, Margaret Bellows Clark and Reynolds Bellows. Such result is incompatible with and would frustrate the dominant testamentary scheme as evidenced by the will, codicil and the particular facts and circumstances under which the provisions therein were framed.

Thus, in light of the rule favoring testacy, particularly as to a gift from the residuary estate (*Matter of Nurse,* 35 NY2d 381, 388), and the presumption that a will evidences a testator's intent to dispose of his entire estate (see *Matter of Dammann,* 12 NY2d 500, 504, *supra*), and cognizant of the rule favoring heirs of blood (*Matter of Larkin,* 9 NY2d 88, 92, *supra*), the intent of the testatrix, "gleaned * * * from a sympathetic reading of the will as an entirety" must govern (*Matter of Fabbri,* 2 NY2d 236, 240, *supra*). Having ascertained the testatrix' dominant purpose, the inadvertent omission to provide for the contingency which arose must be subordinated to an approach of common sense and justice, namely, conformity with the testamentary design as to corpus, to wit, the benefit of lineal descendants only (*Matter of Cutter,* 4 AD2d 966, 967, affd 5 NY2d 1018; see *Matter of Englis,* 2 NY2d 395, 402, *supra*).

In each of the three trusts established by the will, had Donald Bellows predeceased Margaret and Reynolds, the principal would have only been distributed to heirs of the testatrix' blood. Here, the testatrix failed to anticipate the contingency which occurred, namely, the death of her child Donald Bellows without issue and survived not by his brother or sister, but by the issue of those siblings. Nevertheless, the testatrix' intent to preserve her estate for her direct descendants is more than sufficiently clear to find a gift by implication of the corpus of the remaining trust to her grandchildren. It was obviously not her intent that any interest of such persons be defeated by the demise of her children "as it were, in the wrong order" (*Matter of Thall,* 18 NY2d 186, 194, *supra;* see *Matter of Selner,* 261 App Div 618, affd 287 NY 664, *supra*).

Accordingly, it was error to decree distribution of the remainder of the residuary estate trust as intestate property. The decree of the Surrogate's Court should be reversed and the corpus of the trust held for Donald should be distributed to the children of Margaret Bellows Clark and to the children of Reynolds Bellows.

LAZER, J. P., MANGANO and NIEHOFF, JJ., concur.

Decree of the Surrogate's Court, Kings County, dated October 26, 1982, reversed, on the law and the facts, without costs or disbursements, and matter remitted to the Surrogate's Court, Kings County, for further proceedings in accordance with the opinion herewith.