OPINION OF THE COURT
John B. Riordan, J.
This is a first and final accounting of Rhonda Carniol, the executor of the estate of David Carniol. The prayer for relief includes a request to allow the executor to modify the terms of the article fourth trust created under the will.
The decedent, David Carniol, died on March 2, 2005. The decedent’s will dated August 26, 1998 was admitted to probate and letters testamentary issued to Rhonda Carniol on May 23, 2005. Article fourth of the will provides as follows:
‘T give the proprietary lease or leases to, and the stock evidencing ownership of, any cooperative apartment or apartments which I own at the time of my death, together with any applicable insurance policies, including prepaid premiums, to my wife, diane carniol, or, if she does not survive, to my trustee, in trust, who shall retain the apartment for use by my granddaughter, aimee robin carniol, if and for as long as she wishes to reside there. Payments for expenses regarding the use or preservation of the property, including maintenance, real estate taxes, insurance premiums, repairs, and interest and principal on any mortgage on any apartment or on the underlying property, and for capital improvements shall be made by my granddaughter. Neither my granddaughter nor my trustee shall be liable for loss, destruction, usage or waste of any apartment held hereunder, or for any decline in its value or its failure to appreciate in value.
“My trustee may, with the consent of my granddaughter, sell any apartment held hereunder at any time for such price and on such terms and conditions as my trustee shall determine and invest as much or all of the proceeds as my trustee shall determine in another residence, on the same terms that apply to the original residence. Any proceeds of sale in excess of the amount used to purchase another residence shall be added to the trust under
ARTICLE FIFTH.
“Upon the death of aimee robin carniol, my trustee shall sell any apartment held hereunder for such *889 price and on such terms and conditions as my trustee shall determine and distribute the proceeds of sale to the trust under article fifth.”
In addition, article fifth of the will provides as follows:
“If my wife does not survive me and if either of my grandchildren, aimee robin carniol and steven carnoil, survives me, I give the sum of One Hundred Fifty Thousand Dollars ($150,000) to my trustee, in trust.
“During the lifetime of the survivor of aimee robin carniol and steven carniol, my trustee shall pay or apply the income of the trust, at least quarterly, in equal shares to or for the benefit of my grandchildren, AIMEE ROBIN CARNIOL, and STEVEN CARNIOL, if they are both living or in its entirety to the only one then living during the term of the trust.
“In addition, my trustee may distribute as much or all of the principal of the trust to or between, or apply the same for the benefit of aimee robin carniol and steven carniol, during the term of the trust, at such times and in such amounts, without regard to equality of distribution, as my trustee in his or her discretion, deems advisable for the health, support or maintenance of the beneficiary.
“Upon the death of aimee robin carniol and steven carniol, my trustee shall distribute the remaining principal, if any, to the descendants of norman carniol then living or, if none, to my descendants then living.”
Decedent’s wife Diane predeceased the decedent. Both Aimee Robin Carniol and Steven Carniol survived him. The decedent was also survived by a minor grandchild, April Carniol, who is a daughter of Norman Carniol, and, therefore, a presumptive remainderman of the article fifth trust.
The petitioner avers that inquiry was made to the Hillpark Co-op Association regarding the proposed transfer of the apartment to the trust. According to the petitioner, the co-op association advised that it would not approve a transfer to a trust and, in addition, that any person residing in the apartment needed co-op board approval, which could be granted only after all required forms are completed and the proposed resident appears before the board. To determine whether this was accurate, petitioner’s counsel wrote to the attorneys for the co-op association on two separate occasions and was advised in writing both times that the board would not approve a transfer to a trust.
*890 Petitioner further states that Paul Carniol, the trustee of the article fourth trust, obtained the required forms and sent them to Norman Carniol, Aimee’s father, with a request that he assist Aimee in completing the forms. The trustee claims that he never received a response despite following up numerous times with Aimee’s father, Norman. Petitioner believes that based upon Aimee’s financial situation and “certain other aspects of her history,” it is unlikely that the co-op board will approve her tenancy even assuming she could overcome the board’s policy prohibiting transfers to a trust. Accordingly, petitioner asked Aimee if she would consent to a sale of the apartment; however, Aimee never gave a definitive response to petitioner’s request.
Under these circumstances, petitioner now asks the court’s permission to modify the terms of the article fourth trust to permit her either to (1) sell the cooperative apartment and to pay the proceeds, net of the existing debt on the property and expenses of sale, to the article fourth trust, or (2) transfer, with or without co-op board approval, the decedent’s right, title and interest in the cooperative apartment to the article fourth trust with a direction that the trust immediately sell such apartment. Once the property is sold, either by the executor or by the trustee, petitioner asks that the trustee of the article fourth trust, at his discretion, be permitted to purchase a replacement apartment or home for Aimee and that any excess funds be used to defray the cost of housing, including rent on an apartment or home, utilities, real estate taxes and other appurtenant charges for Aimee for her lifetime, or until the trust proceeds are exhausted. The petitioner also seeks a direction from the court ordering Aimee to pay the costs of carrying the apartment until this proceeding is completed, and, if Aimee fails to meet such obligation, authorizing her to sell the cooperative apartment and apply the proceeds in the manner described above.
Steven Carniol, a beneficiary of the article fifth trust, has suggested two alternate methods of relief. First, he proposes that assets totaling $75,000 of the article fifth trust be immediately allocated and distributed to him upon the funding of the article fifth trust. He further proposes that the article fifth trust be directed to pay the costs associated with the decedent’s cooperative apartment until it is sold. Once the apartment is sold, the excess proceeds from the sale and the balance of funds in the article fifth trust would be held in trust for Aimee and be used to defray her housing costs and medical expenses during her lifetime or until the remainder is exhausted.
*891 Upon Aimee’s death, any assets remaining in the article fourth trust shall be transferred to the article fifth trust.
Steven points out that the article fifth trust would have been fully funded, but for the fact that estate funds have been used to pay expenses relating to the apartment. Alternatively, he proposes that, upon the sale of the apartment, the amount of the expenses paid should be refunded to the article fifth trust so that the trust is fully funded with $150,000. The excess proceeds from the sale should then be held in trust for Aimee and be used to defray her housing costs and medical expenses for her lifetime or until the article fourth trust is exhausted. Upon her death, any assets remaining in the article fourth trust would be distributed to the article fifth trust to be disposed of pursuant to the terms thereof. Steven also proposes that assets totaling $75,000 of the article fifth trust be immediately allocated and distributed to him upon formation of the ARTICLE FIFTH trust.
The petitioner’s accounting recites that she takes no position as to the alternative relief requested by Steven, but notes that the amount of the current liquid assets may make Steven’s proposal unfeasible.
Initially, the court notes that the stock and proprietary lease of a cooperative together constitute ownership of the apartment (11 Warren’s Heaton, Surrogate’s Court Practice § 84.01 [7th ed]). A proprietary lease may provide for transfer only upon approval of the directors of the cooperative. “[S]uch a restraint cannot prevent a testator from disposing of a co-op by will (see Application of Blakeman, 518 F Supp 1095, 1099). It may nonetheless prevent the legatee from occupying the apartment” (Matter of Katz, 142 Misc 2d 1073, 1076 [Sur Ct, NY County 1989]). In Matter of Katz, the court held that the board’s approval was not necessary in order for the owner to make a gift of the co-op even though the donee might be prohibited from taking actual possession for lack of board approval. The court found that “[although the donee may not be permitted to take possession, title will pass and the donee has the right to the monetary interest in the co-op” (Matter of Katz, 142 Misc 2d 1073, 1076 [1989]). Thus, the possibility that Aimee may not be permitted to take possession of the co-op does not invalidate the transfer.
Here, however, the matter is further complicated because the co-op board has a restraint on the transfer of a cooperative apartment to a trust. Accordingly, there is not only a restriction *892 on possession in the instant case, but also a restriction on ownership since title cannot be transferred to a trust. Thus, unlike the donee in Matter of Katz, the trust does not have a separate monetary interest in the co-op.
It is a basic rule of reformation, that a testator’s intent must be gleaned from a reading of the entire instrument (Matter of Thall, 18 NY2d 186 [1966]; Matter of Fabbri, 2 NY2d 236 [1957]). It appears from the will, in its entirety, that the testator intended for Aimee to have a place “to reside” for as long as she wishes. The testator, however, placed the burden of expenses “regarding the use or preservation of the property” upon Aimee. The testator also restricted the trustee’s ability to sell the property absent Aimee’s consent. Absent from the will, however, is a provision considering the possibility that Aimee would fail to pay for the expenses and would also fail to consent to a sale.
Based upon the co-op board’s restriction on transfer policy as evidenced in the letters from the co-op board’s attorney submitted to the court, the executor is unable to transfer ownership to the article fourth trust. Aimee has failed to meet the obligation imposed on her by the terms of the will to pay the expenses of the apartment. Moreover, a sale cannot be effectuated because Aimee has not consented. For these reasons, the executor has asked the court to reform the will. The terms of the will, however, are clear as is the testator’s intention to provide a place for Aimee to reside. Nevertheless, “[t]he doctrine of equitable deviation has been applied to allow trustees to depart from the terms of a trust instrument where there has been an unforeseen change in circumstances that threatens to defeat or substantially impair the purpose for which the trust was created” (Matter of Aberlin, 264 AD2d 775 [2d Dept 1999] [citation omitted]).
It appears that the testator did not foresee the possibility that Aimee would be unable to pay for the upkeep of the co-op apartment and withhold her consent to a sale, or that the board would not approve a transfer of the shares to a trust. Also, estate assets are being depleted to maintain the apartment, even though the testator’s intention of providing this residence for Aimee cannot be realized. Thus, the circumstances of the instant case justify an equitable deviation from the literal terms of the will and the court authorizes the executor to sell the cooperative apartment and pay the proceeds, net of the existing debt on the property and expenses of sale, to the article fourth *893 trust after repayment to the article fifth trust for those funds previously used to pay the expenses on the co-op.
Concerning the request for authorization to purchase a replacement residence for Aimee, the court finds that an evidentiary hearing is necessary in order for a finding to be made as to Aimee’s ability and intention to pay the expenses of upkeep. If Aimee is unable to pay these expenses, the same problem will arise in connection with a replacement residence. If the court finds that Aimee is unable to pay the expenses of upkeep on a replacement residence, the article fourth trust will be collapsed and the funds held therein will be paid over to the article fifth trust. Since one half of the income from the article fifth trust is payable to Aimee, Aimee will receive some immediate benefit in accordance with the testator’s intention.
In addition, the court notes that the only presumptive remainderman of the article fifth trust, which has been used to pay the expenses of upkeep imposed upon Aimee, is an infant. In fact, both of the proposals suggested by Steven affect the interests of the article fifth remainderman because he asks for the immediate allocation to him of $75,000 upon the funding of the article fifth trust. Accordingly, Steven’s proposals which adversely affect the interest of the infant presumptive remainderman are unacceptable.